[No. 12202.    Department Two. — November 12, 1890.]

HENRY TOOMEY, RESPONDENT, v. THE SOUTHERN PACIFIC RAILROAD COMPANY, APPELLANT.

RAILROAD TRACK — TRESPASSER. — A person who walks upon a railroad track without license or right to do so is a trespasser.

ID. — NEGLIGENCE — DUTY TO TRESPASSER — MACHINERY AND APPLIANCES — CAUTIONARY SIGNALS. —A railroad company is not bound to furnish any particular kind of machinery or appliances for the benefit of a trespasser, or (when not aware of his presence) to give cautionary signals to warn him of the approach of its trains, and its omission to do so is not negligence.

ID. — CROSSINGS — STATUTORY REQUIREMENT OF SIGNALS. — A statutory provision requiring the bell to be rung or whistle blown on approaching a crossing is for the benefit of those who use the crossing, and not for the benefit of trespassers at other points, and such trespassers cannot complain of the omission to comply with the statute, even though they would have heard the signals had they been given, and been warned thereby.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*W. C. Belcher*, for Appellant.

Deceased was a trespasser on defendant's right of way, and, as such, defendant owed him no duty beyond the negative one not to inflict upon him any willful or wanton injury; and as defendant owed him no duty, the omissions relied on could not constitute negligence, on its part; and even if defendant could be considered

to have been negligent, the conduct of the deceased constituted contributory negligence, such as to prevent any recovery. (*Tennenbrock* v. *South. Pac. C. R. R. Co.*, 59 Cal. 269; *Williams* v. *S. P. R. R. Co.*, 72 Cal. 120; *Pittsburgh etc. R. R. Co.* v. *Bingham*, 29 Ohio St. 369; 23 Am. Rep. 751; *Lary* v. *Cleveland*, 78 Ind. 329; 41 Am. Rep. 572; *St. Louis etc. R'y Co.* v. *Monday*, 49 Ark. 257; *Central R. R. etc. Co.* v. *Smith*, 78 Ga. 694; *Mobile etc. R. R. Co.* v. *Stroud*, 64 Miss. 784; *Palmer* v. *Chicago etc. R. R. Co.*, 112 Ind. 250; *Strong* v. *Canton etc. R. R. Co.*, 3 South. Rep. 465; *Fraser* v. *S. & N. Alabama R. R. Co.*, 81 Ala. 185; *Cassida* v. *Oregon etc. Co.*, 14 Or. 551; *Memphis etc. R. R. Co.* v. *Womack*, 84 Ala. 149; *Williams* v. *Kansas C. etc. R. R. Co.*, 96 Mo. 275; *Frost* v. *R. R. Co.*, 64 N. H. 220; 10 Am. St. Rep. 396; *Battishill* v. *Humphreys*, 64 Mich. 494, 512; *Hughes* v. *R. R. Co.*, 67 Tex. 595; *Palmer* v. *R. R. Co.*, 37 Minn. 223; *Armstrong* v. *Medbury*, 67 Mich. 250; 11 Am. St. Rep. 585; *Bouwmeester* v. *R. R. Co.*, 67 Mich. 87; *McDonald* v. *R. R. Co.*, 35 Fed. Rep. 38; *Galveston etc. R. R. Co.* v. *Ryon*, 70 Tex. 56; *Little Rock etc. R. R. Co.* v. *Haynes*, 47 Ark. 497; *Little Rock etc. R'y Co.* v. *Pankhurst*, 36 Ark. 371; *St. Louis etc. R'y Co.* v. *Freeman*, 36 Ark. 41; *Denman* v. *St. Paul etc. R. R. Co.*, 26 Minn. 357; *Scheffler* v. *Minnesota etc. R'y Co.*, 32 Minn. 518; *McAllister* v. *Burlington & N. W. R'y Co.*, 64 Iowa, 395; *Yarnall* v. *St. Louis etc. R'y Co.*, 75 Mo. 575; *Zimmerman* v. *Hannibal etc. R. R. Co.*, 71 Mo. 476; *Burnett* v. *Burlington & M. R. R. Co.*, 16 Neb. 332; *Mason* v. *Missouri P. R'y Co.*, 27 Kan. 83; 41 Am. Rep. 405; *Colorado Cent. R. R. Co.* v. *Holmes*, 5 Col. 197, 516; *Laicher* v. *New Orleans etc. R. R. Co.*, 28 La. Ann. 320; *Houston etc. R. R. Co.* v. *Smith*, 52 Tex. 178; *Holmes* v. *Cent. R. R. etc. Co.*, 37 Ga. 593; *Baltimore etc. R. R. Co.* v. *Allison*, 62 Md. 479; *Illinois Cent. R. R. Co.* v. *Godfrey*, 71 Ill. 500; 22 Am. Rep. 112; *Illinois Cent. R. R. Co.* v. *Hetherington*, 83 Ill. 510; *Terre Haute etc. R. R. Co.* v. *Graham*, 95 Ind. 286; 48 Am. Rep. 719; *Jeffersonville etc. R. R.*

*Co.* v. *Goldsmith*, 47 Ind. 43; *Louisville etc. R. R. Co.* v. *Howard*, 82 Ky. 212; *Button* v. *Hudson River R. R. Co.*, 18 N. Y. 248; *Nicholson* v. *E. R'y Co.*, 41 N. Y. 525; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; 54 Am. Rep. 718; *Morrissey* v. *Eastern R. R. Co.*, 126 Mass. 377; 30 Am. Rep. 686; *Philadelphia etc. R. R. Co.* v. *Hummell*, 44 Pa. St. 375; *Baltimore etc. R. R. Co.* v. *Schwindling*, 101 Pa. St. 258; 47 Am. Rep. 706; Wharton on Negligence, secs. 388 a, 804; Pierce on Railroads, 330; Shearman and Redfield on Negligence, secs. 25, 36, 491; 1 Thompson on Negligence, 449.) The fact that defendant was required by express statutory regulation to blow its whistle or ring its bell for a certain distance before reaching a highway crossing has nothing to do with this case. The accident occurred 150 yards beyond the crossing, and it is not found that the omission complained of in any way caused the injury. But plaintiff is not in a position to complain of that omission. His negligence proximately contributed to the injury, and the statute referred to does not abrogate the doctrine of contributory negligence. (*Meeks* v. *Southern Pac. R. R. Co.*, 52 Cal. 602; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 137.) Moreover, this statute was not intended for the benefit of trespassers on the track, and imposes on the company no duty with regard to them. (*Holmes* v. *R. R. Co.*, 37 Ga. 593; *Bell* v. *R. R. Co.*, 72 Mo. 50, 58; *Elwood* v. *R. R. Co.*, 4 Hun, 808; *Philadelphia etc. R. R. Co.* v. *Spearen*, 47 Pa. St. 300; 86 Am. Dec. 544; *O'Donnell* v. *R. R. Co.*, 6 R. I. 211; *Harty* v. *R. R. Co.*, 42 N. Y. 468.)

*J. E. McElrath*, for Respondent.

Even a wrong-doer is entitled to recover for injuries negligently inflicted upon him, unless his own negligence proximately contributed to the injury. (Redfield on Railways, 2d ed., sec. 150, pp. 330, 331; *Robinson* v. *Cone*, 22 Vt. 213; 54 Am. Dec. 67; *Illidge* v. *Goodwin*, 5 Car. & P. 191; *Zemp* v. *Wilmington & M. R. R.*, 9 Rich.

84; 64 Am. Dec. 763; *Needham* v. *S. F. & S. J. R. R. Co.*, 37 Cal. 409; *R. R. Co.* v. *Jones*, 95 U. S. 439; *Twomley* v. *R. R. Co.*, 69 N. Y. 158; 25 Am. Rep. 162; *Northern etc. R. R. Co.* v. *State*, 29 Md. 420; 96 Am. Dec. 545; *Kay* v. *R. R. Co.*, 65 Pa. St. 269; 3 Am. Rep. 628; 4 Field's Lawyers' Briefs, 592, and authorities cited; *Davies* v. *Mann*, 10 Mees. & W. 545; *Lynch* v. *Nardin*, 1 Ad. & E., N. S., 29; *Huelsenkamp* v. *R. R. Co.*, 37 Mo. 537; 90 Am. Dec. 399; *Macon & W. R. R. Co.* v. *Davis*, 18 Ga. 679; *Morrissey* v. *Wiggins Ferry Co.*, 43 Mo. 380; 97 Am. Dec. 402; 47 Mo. 521; *Brown* v. *Hannibal & St. J. R. R. Co.*, 50 Mo. 461; 11 Am. Rep. 420; *Harlan* v. *St. Louis etc. R'y Co.*, 65 Mo. 22; *Hicks* v. *Pacific R. R.*, 64 Mo. 430; *Vicksburg & Meridian R. R. Co.* v. *McGowan*, 62 Miss. 683; 52 Am. Rep. 205; 3 Lawson's Rights, Remedies, and Practice, sec. 1192, and cases cited.)

HAYNE, C. — This was an action for damages for the death of the plaintiff's son, alleged to have been caused by the negligence of the defendant. The trial court, sitting without a jury, gave judgment for the plaintiff, and the defendant appeals upon the findings.

The facts found are as follows: The plaintiff's son, a lad of eighteen, was run over and killed while walking at night upon the defendant's track. About 150 yards to the south of the place of the accident was a public crossing, but it does not appear that the deceased had been at this crossing. He was going in an opposite direction, towards a neighboring town, which was more than a mile away. There was no path, road-way, or crossing at the place of the accident, or nearer thereto than the crossing mentioned, and it is expressly found that the deceased had no license to be where he was, and that it was not usual or customary for any one, except employees of the defendant, to be there. The train was an extra or special train. It was going in the same direction as the deceased, and had passed the crossing above referred

to. The engine, though running in front of the cars, was in a reversed position, so that the tender was in front. There was no head-light or cow-catcher upon the tender, and the bell was not rung or the whistle blown on approaching the crossing, as required by section 486 of the Civil Code. None of the employees on the train saw the deceased until after he was hurt.

What is claimed to constitute negligence is the omission to have a head-light and cow-catcher, and the omission to cause the bell to be rung or the whistle to be blown at the crossing. The central position of the defense is, that the deceased was a trespasser upon the track, and it is very clear that he was such. The track was not a highway for pedestrians. The law holds a railroad company to a very high degree of responsibility for the safety of its passengers, and public convenience requires rapid transit. Such being the case, regard for the safety of the passengers, and common justice to the company, require that (except at crossings and similar places) the track should be kept clear. In some countries, this is regarded as of such importance that it is made a penal offense to trespass upon a railroad track; and even at crossings there are gates and gate-keepers to prevent people from crossing when trains are approaching. In this country, there are no such regulations. The matter is left to individual good sense and responsibility; but it is none the less of grave importance that the track should be kept clear. The law does not sanction its use as a path or sidewalk, and if people persist in using it as such, they must be held to be doing an act which is not lawful. This, which seems clear enough on principle, is fully sustained by authority. In *Philadelphia etc. R. R. Co.* v. *Hummell,* 44 Pa. St. 378, 84 Am. Dec. 457, the court, per Strong, J., said: "It is time it should be understood in this state that the use of a railroad track, cutting, or embankment is exclusive of the public everywhere, except where a way crosses it.

This has more than once been said, and it must be so held, not only for the protection of property, but, what is far more important, for the preservation of personal security, and even of life. In some other countries, it is a penal offense to go upon a railroad. With us, if not that, it is a civil wrong of an aggravated nature, for it endangers not only the trespasser, but all who are passing or transporting along the line. As long ago as 1852, it was said by Judge Gibson, with the concurrence of all the court, that 'a railway company is a purchaser, in consideration of public accommodation and convenience, of the exclusive possession of the ground paid for to the proprietors of it, and of a license to use the highest attainable rate of speed, with which neither the person nor property of another may interfere.'" Similar language was used in *Mulherrin* v. *Railroad Co.*, 81 Pa. St. 375. In *Baltimore etc. R. R. Co.* v. *State*, 62 Md. 487, 50 Am. Rep. 233, the court, per Irving, J., said: "A right of way of a railroad company is the exclusive property of such company, upon which no unauthorized person has the right to be, and any one who travels upon such right of way as a footway, and not for any business with the railroad, is a wrong-doer and a trespasser." In *Palmer* v. *Railroad Co.*, 112 Ind. 253, the court, per Elliott, J., said: "Under the firmly settled rule, the deceased must be regarded as having been a trespasser on the track of the railroad company at the time of his death." (And see also *Morrissey* v. *Railroad Co.*, 126 Mass. 380; 30 Am. Rep. 686; *St. Louis etc. R. R. Co.* v. *Monday*, 49 Ark. 262; *Mason* v. *Railway Co.*, 27 Kan. 83; 41 Am. Rep. 405.) In all of these cases the person injured was trespassing upon the property of the company, and the proposition stated was directly involved.

The deceased having been a mere trespasser, the defendant did not owe him the duty of doing acts to facilitate his trespass, or to render it safe. It is to be observed

here that we are not saying that the fact that he was a trespasser would justify the infliction of a willful or wanton injury upon him. It is well settled that the commission of ·a trespass does not justify the infliction of an injury by way of punishment or revenge, or out of mere recklessness. Nor are we saying that a railroad company is not bound to use ordinary care after seeing the dangerous position of a trespasser. No such principle is involved in this case. For it appears, not only that the employees on the train did not see the deceased until after the accident, but, by reason of the darkness, could not in all probability have done so. What we say is, that the company does not owe to a mere trespasser upon its track the duty of doing acts to facilitate his trespass, or render it safe. In other words, it is not bound to provide any particular kind of machinery or appliances for his benefit, or (when not aware of his presence) to give cautionary signals to notify him of the approach of its trains. And we do not put this upon the ground of contributory negligence, which would imply that the defendant, as well as the deceased, was guilty of negligence in a legal sense. We put it upon the ground that the defendant owed no duty to the deceased to do the acts whose omission is complained of. What we conceive to be the true rule was clearly stated by McKee, J., in *Tennenbrock* v. *Railroad Co.*, 59 Cal. 269, in which the plaintiff was walking upon the defendant's trestle, and was injured while trying to escape from a train which had failed to whistle on approaching the trestle. The other justices of the department, however, "concurred in the judgment," on the ground of contributory negligence. In the subsequent case of *Williams* v. *Railroad Co.*, 72 Cal. 120, the plaintiff was injured while lying drunk near the rails. It was conceded by his counsel that he was a trespasser, and that the company did not owe him the duty of looking out for him; and the court adopted this concession,

and went on to inquire whether there was a want of ordinary care after seeing him. If these cases could be regarded as decisive of the proposition, it would not be necessary to pursue the subject further. But, as already stated, the opinion of McKee, J., was not concurred in by the other justices. And with reference to the Williams case, it is insisted for the plaintiff that the concession of counsel does not make the law, and that the proposition is unsound in principle and contrary to previous decisions. In view of these criticisms, we have examined the question without regard to the cases referred to.

The proposition that mere omissions do not amount to negligence, in a legal sense, unless there was a legal duty to do the act, is fundamental, and it must necessarily be true; for if there be no duty to do the act,—in other words, if the party be not bound to do it, — he has a right to omit it, and he cannot be held liable for omitting something which he has a right to omit. In this regard the language of Pollock is expressive and apt. " For mere omissions," he says, " a man is not, generally speaking, held answerable. Not that the consequences or the moral gravity of an omission are necessarily less; . . . . but, unless he is under some specific duty of action, his omission will not in any case be either an offense or a civil wrong." (Pollock on Torts, 352. See also Cooley on Torts, 659, 660; Addison on Torts, 953; Wharton on Negligence, sec. 3; *Pittsburgh etc. R. R. Co.* v. *Bingham*, 29 Ohio St. 369; *St. Louis etc. R. R. Co.* v. *Monday*, 49 Ark. 261; *Nicholson* v. *Railroad Co.*, 41 N. Y. 529.) If this proposition be true, the question reduces itself to this: Did the defendant owe to the deceased the duty of doing the acts whose omission is complained of? We think not. So far as machinery and appliances are concerned, it seems entirely clear that a mere trespasser cannot claim that a railroad company is bound to furnish them for his benefit. He can

no more complain of the want of proper machinery than the tramp who steals a ride upon the trucks can complain that due care was not used in the selection of the wheels. The case is not like that class of cases in which trespassers are injured by spring-guns, or the like. The use of such contrivances ordinarily implies an *intention* to injure, or a recklessness which is its practical equivalent; and, as has been stated, the commission of a trespass does not justify the intentional or reckless infliction of an injury. So far as the omission to give cautionary signals is concerned, it seems equally clear that the defendant had a right to assume that no trespassers were upon its track, and to act upon that assumption, in the absence of knowledge to the contrary. A trespasser of whose presence the defendant was not aware can no more complain of the omission to give such signals than an idler who strolls unnoticed into a foundry to gratify his curiosity can complain that there was nothing to warn him of the danger he was in. To hold otherwise would be to compel the defendant to keep giving such signals over the whole length of its route. These general propositions are fully sustained by the cases above cited. The counsel for the plaintiff relies upon the maxim, *Sic utere tuo ut alienum non lædas.* But the meaning of this is, that a man must so use his own as not to injure *the rights* of others. The maxim is so interpreted in the Civil Code. (Sec. 3514.) It does not aid us in ascertaining what the rights of others are, and it certainly does not mean that a person is liable for the damage caused by every accident to which his agency may have conduced, regardless of other considerations.

If, therefore, there had been no crossing in the vicinity, we should say that it was very clear that there was no duty on the part of the defendant to do the acts whose omission is complained of. But it has been suggested that, so far as the ringing of the bell and the blowing of the whistle are concerned, the duty is im-

posed by statute; that in all probability the deceased could have heard such signals from the place where he was, and that he may have relied upon them. This suggestion assumes that the duty imposed by statute was a duty to all the world, or to some class of which the deceased was a member. We think, however, that the intention could not have been to facilitate unlawful acts. An illustration will make this clear. Suppose that a train-wrecker should wish to destroy a particular train, and should rely upon the whistle or bell at a neighboring crossing for warning in time to make his escape, but should be taken unawares and run over, because no whistle was blown or bell rung, would he be heard to say that the duty imposed by statute was a duty to him, and that its omission was negligence for which he could recever? We think not. And so here, the trespass upon the track was, as we have shown, an unlawful act, and the provision of the statute was not intended to facilitate it. The duty imposed was for the benefit of those who use the crossing, and who, in consequence, have a right to be on the track. The deceased was not of this class. He was not at the crossing at the time of the accident. He does not appear to have been there at all, but was going in an opposite direction, for purposes of his own.

The case of *Needham* v. *Railroad Co.*, 37 Cal. 410, is not in conflict with the foregoing. What is said in that case relates to the facts before the court, which were as follows: The plaintiff's mare escaped from his premises and became fastened in the defendant's trestle. The train stopped, and the train-men removed her in what was claimed to be a negligent manner. It is plain, therefore, that they saw the animal in time to permit the use of ordinary care; and the proposition laid down was, that, in such case, such care must be used. But, as has been stated, this proposition is not involved in this case, because the train-men did not see the deceased until after

the accident, and by reason of the darkness could not in all probability have done so.

The plaintiff's counsel seems to place some reliance upon the fact that the train was an extra or special train. But we do not think this at all material. It can hardly be contended that a railroad company has no right to run an extra train for a particular occasion. The duty of advertising the time of starting applies only to regular trains.

To guard against misapprehension, it may be added that in what we have said we have had no reference to cases where the track is in a highway, or to any case where the person injured has a right to be upon the track.

Upon the facts found, we think that there was no liability on the part of the defendant, and as the correctness of the findings of fact is not disputed, we advise that the judgment be reversed, and the cause remanded, with directions to enter judgment for the defendant.

VANCLIEF, C., and GIBSON, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with directions to enter judgment for the defendant.

Hearing in Bank denied.