LYNCH, APPELLANT, *v.* GREAT NORTHERN RAILWAY CO. ET AL., RESPONDENTS.

(No. 2,624.)

(Submitted March 1, 1909. Decided March 27, 1909.)

[100 Pac. 616.]

*Personal Injuries—Death by Negligence—Railroads—Complaint —Insufficiency—Demurrer.*

Personal Injuries—Death by Negligence—Complaint—Insufficiency.
   1.   Where, in an action against a mining company and a railroad company to recover damages for the negligent killing of a person while walking on or crossing the latter defendant's track, which action was based upon the alleged fault of the former in allowing steam from its plant to be so exhausted as to obscure the track, and upon the negligent failure of the employees of the latter to give warning of an approaching train, it was impossible to ascertain from the allegations of the complaint at what place the accident occurred, where the track was enveloped in steam, whether deceased was in the steam on the track when killed, or at a place where miners were in the habit of crossing the track in going to or coming from work, a demurrer to the pleading was properly sustained.
Same—Railroad Crossings—Duty to Give Signals.
   2.   If deceased was not on a public crossing when struck by defendant railroad company's train, but several hundred feet away from it, the

failure of its employees to give warning of the approaching train did not constitute a breach of any duty which the company owed him.

Same—Complaint—Insufficiency.

3.   The allegation in the complaint that it was the duty of defendant railroad company to refrain from wantonly killing a human being on its track and, in order to observe said duty, to give warning of an approaching train, was insufficient to put the defendant in the wrong, in the absence of the further allegation that it had not observed the duty, or that deceased was in a place where its observance would have enabled him to escape injury.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by Matilda Mary Lynch, administratrix of the estate of Timothy P. Lynch, deceased, against the Great Northern Railway Company and the Boston and Montana Consolidated Copper and Silver Mining Company. From a judgment for defendants on demurrer to the complaint, plaintiff appeals. Affirmed.

*Messrs. Breen & Hogevoll,* for Appellant.

We have set out in the complaint that there was a crossing and by reason thereof there was a statutory duty to sound the whistle or ring the bell when a highway was crossed. A violation of positive law is willful negligence. Another part in the complaint showing willful negligence is the allegation that the caboose was put in front of the engine, thereby making it impossible for defendants to observe trespassers. Running a train backward without lights or signals amounts to willful negligence. (*Bolin* v. *Southern Ry. Co.*, 65 S. C. 222, 43 S. E. 665.) Placing a caboose in front of the engine is no less willful negligence. Contributory negligence is no defense if the railway company violates a statutory duty, as in the case at bar. (Thompson on Negligence, sec. 210.) If the company has reason to believe that trespassers are on its track, then it is under obligation to exercise ordinary care to discover their presence and avoid injuring them. (*St. Louis etc. Ry. Co.* v. *Shifflet* (Tex. Civ. App.), 56 S. W. 698.) Increased care is demanded of the company where the view is obstructed—in this case by the

caboose in front of the engine and by the exhaustion of the steam on the track.   (Thompson on Negligence, sec. 1509.)

*Messrs. Forbis & Evans,* and *Messrs. Kremer, Sanders & Kremer,* for Respondent Boston & Montana Con. Copper & Silver Mining Company.

*Mr. I. Parker Veazey,* for Respondent, Great Northern Railway Company.

Citing: *Egan* v. *Montana Central Ry. Co.,* 24 Mont. 571, 63 Pac. 831; *Driscoll* v. *Clark,* 32 Mont. 192, 80 Pac. 1373; *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227, 53 Pac. 651; *Denver City Tramway Co.* v. *Cobb,* 164 Fed. 43; *Kansas City etc. Ry. Co.* v. *Cook,* 66 Fed. 122, 13 C. C. A. 364, 28 L. R. A. 181; *Masser* v. *Chicago R. I. & P. Ry. Co.,* 68 Iowa, 602, 27 N. W. 776; *Nolan* v. *New York & N. H. R. Co.,* 53 Conn. 461, 4 Atl. 106; *Glass* v. *Memphis & C. R. Co.,* 94 Ala. 581, 10 South. 217; *Hulsey's Adm.* v. *Louisville Ry. Co.,* 27 Ky. Law Rep. 969, 87 S. W. 302; *Wencker* v. *Missouri K. & T. Ry. Co.,* 169 Mo. 592, 70 S. W. 145; *Louisville & N. R. Co.* v. *Hocker,* 111 Ky. 707, 64 S. W. 638, 65 S. W. 119.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action, after alleging the corporate character of the Great Northern Railway Company and the Boston and Montana company, and the representative capacity of the plaintiff, reads as follows:

"(4) That the said defendants William Borden, Daniel Eaton, J. H. Kane, and Charles B. Foster now are, and have at all the times hereinafter set out been, citizens of the state of Montana, and have resided in the city of Butte in said state, and at the time of the injury hereinafter described were servants of the said railway company, and had charge of the engine and caboose that ran over the deceased as hereinafter set out.

"(5) That on or about the fifth day of February, A. D. 1908, the said defendants, acting jointly, and by their joint act of

wanton and willful negligence, did strike, maim, and kill Timothy P. Lynch, the husband of this plaintiff, as follows, to-wit: The said defendant Boston and Montana Consolidated Copper and Silver Mining Company has for a long time prior to the said date, and did on the said date, operate a mine known as the 'Gambetta Mine,' and from the said mine the said corporation willfully, wrongfully, and negligently exhausted steam on the track of the said railway corporation, through a certain pipe laid at said place by the said Boston and Montana Consolidated Copper and Silver Mining Company, and thereby did obscure the said track, and made it impossible for the other said defendants to see through the said steam, and thereby did cause the injury hereinabove set out, by making it impossible for any person walking on the said track to see through the said steam, and no person could tell if a locomotive or cars came along while the said steam was obstructing the view of said track, and the said track was thereby made extremely and extraordinarily dangerous for pedestrians on the said track, and extremely dangerous for all persons that used said track who were by virtue of necessity, and as licensees, using said track. That the said exhaustion of steam had continued for at least a year before the fifth day of February, 1908.

"(6) That at the said place, near the said Gambetta mine, a great many mines are operated, and approximately five hundred men, as a general rule, would, between the hours of 5 and 6 in the afternoon, at which time of the day the injury hereinafter described took place, use the said track as pedestrians for a distance of from two hundred to five hundred feet, or cross at a certain crossing about two hundred feet north of the point where the injury hereinafter described took place. That approximately for ten years previous to the said date the said number of men had, without objections from the said railway company, and by the said railway company's license, and as a matter of necessity in going and coming to and from their work to mines surrounding the said track, used the said track as a footpath, and had been in the habit of crossing the said track at the said place, and at different places, where the said injury took

place.   That by virtue thereof the deceased, Timothy Lynch, was a licensee, and was rightfully on the track.

"(7) That the said railway company knew that their track was used in the manner as aforesaid, or by the exercise of ordinary care would have known that it was so used, and the said mining company well knew, or by the exercise of ordinary care ought to have known, that the said exhaustion of steam made the said track dangerous as aforesaid, under the condition as hereinabove set out, and the defendants William Borden, Daniel Eaton, H. J. Kane, and Charles B. Foster also well knowing the premises; but nevertheless the said defendant railway company, by its said servants, at some time between the hours of 5 and 6 in the afternoon on the fifth day of February, or thereabouts, in the year 1908, without blowing the whistle at the said crossing, and without looking ahead of the engine or caboose, and in great disregard of human life, attached a certain caboose in front of an engine, and ran from the north over the said crossing of a certain public highway, at the rate of twenty miles an hour, and by their gross negligence and wanton disregard of human life did kill Timothy P. Lynch, the husband of this plaintiff, while the said Timothy P. Lynch was acting with due care on his part, by running over the said Timothy P. Lynch by having their said caboose attached in front of the said engine, while the said engine was running at the rate of twenty miles an hour.

"(8) That the said railway company and its servants, well knowing the negligence of the said mining company by exhausting its steam, and well knowing it would be impossible for a person to get off of its track while in the said steam, did not ring the bell and did not blow the whistle a distance of from fifty to eighty rods from the said crossing.

"(9) That the said railway company and its servants, as it came to the said place where the said view was obstructed, expected that some human being would be run over by the said defendant railway company; and its servants, by reason of the fact as aforesaid, to-wit, that miners were always on the track at said time and at said place, in utter disregard of human life,

going at a dangerous rate of speed, then and there did run over the said deceased Timothy Lynch, and maimed and killed him as aforesaid.

"(10) That it was the duty of the said defendant railway company, and the duty of its said servants, to refrain from wantonly killing any human being on its track; and, in order to observe said duty, it would be necessary to ring the bell or blow the whistle, as hereinbefore set out, and also to blow its whistle or ring its bell in approaching said steam, and not to put a caboose in front of its engine, and thereby obstruct its own view, and not to go at an excessive rate of speed at a place where human beings were constantly known to be crossing or walking on the said track, and when human beings were expected to be. That it was the duty of the said mining company not to so construct and maintain its plant that dense volumes of steam would obstruct the view on the said track, and thereby prevent pedestrians, licensees, and employees and the said railway company and its servants from seeing each other and thereby prevent injury.

"(11) That the place where the said Timothy P. Lynch was killed was in the suburbs of the city of Butte, known as Meaderville, in the county of Silver Bow, state of Montana."

Both corporation defendants filed separately general demurrers to the complaint, which were sustained; and, the plaintiff refusing to plead over, judgment was entered against her, and she appeals therefrom.

On account of the peculiar phraseology of the pleading we have devoted much time to an examination and analysis of this complaint, and necessarily so because the contentions of the respective parties involve questions of law of so great importance to litigants and the legal profession that the court is not satisfied to apply any of them on a foundation of mere conjecture as to the meaning of the complaint. The contention of the appellant appears to be that she is entitled to rely on what has come to be known in the law as the doctrine of the "last clear chance," applied to a case where the defendant *should* have known of the deceased's peril. Another contention is that

a railroad company is bound to use reasonable care to prevent injury to persons who, for a long period of time, without objection from the company, have used the right of way as a convenient path or place of crossing, even though such persons are technically trespassers.   Another contention seems to be that the company owed to deceased the duty to give the proper signals of warning before passing over a public highway crossing. The learned judge who sustained the demurrers said in his order that he did so on the authority of *Egan* v. *Montana Central Ry. Co.,* 24 Mont. 569, 63 Pac. 831.   Appellant contends, in the brief of her counsel, that this case is distinguishable from the *Egan Case,* for the reason that her complaint alleges that the defendant knew her husband was in a place of peril, although he could not be seen.   On the other hand, the respondent railway company claims that the case is squarely within the rule of the *Egan Case,* and should be affirmed on that authority, unless the court is prepared to overrule or modify that case.

The briefs are voluminous and exhaustive, and show great research of authority; and a decent respect for the counsel engaged, and their efforts to assist the court in arriving at a proper conclusion, bearing in mind also the importance of the case to the plaintiff, impels us to state our views with greater elaboration of detail than would otherwise appear to be necessary or desirable under the circumstances.   It is first necessary to ascertain, if possible, from the complaint where Lynch was killed, because the location of that place is determinative of the question whether the defendants owed him any duty in the place where he was, and, if so, what duty.   If we can determine where Lynch was located at the time he was struck and killed, we may then apply the proper rule of law to the conduct of the two defendants under the circumstances, and inform the plaintiff whether or not she may recover damages from one or both of them, provided, of course, that she is able to prove the allegations of her complaint.   If we cannot decide where Lynch was located, it would be idle to attempt to apply any rule of law at all.

It is alleged, in paragraph 5 of the complaint, that the mining company, on February 5, 1908, operated the Gambetta mine, and from the said mine exhausted steam on the track of the railway company through a pipe laid at "said place." This allegation locates the place only to the extent that it was on the track of the railway. Paragraph 6 sets forth that, "at the said place, near the said Gambetta mine, a great many mines are operated, and approximately five hundred men, as a general rule, would, between the hours of 5 and 6 in the afternoon, at which time of the day the injury hereinafter described took place, use the said track as pedestrians for a distance of from two hundred to five hundred feet, *or* cross at a certain crossing about two hundred feet north of the point where the injury took place." We cannot determine from this allegation where the five hundred men were in the habit of crossing, whether at the road crossing, or at a point several hundred feet away, or whether some of them crossed at one place, and some at another, or whether they used first one place and then the other. Nor is the matter made any clearer by the subsequent allegation that the men "used the said track as a footpath, and had been in the habit of crossing the said track at the said place, *and at different places where the said injury took place.*" We cannot tell from this allegation where the injury took place, or where the track was enveloped in steam, or whether the men simply crossed the track at a certain place, or at several places, or walked along the track laterally. Nor is there any allegation that Lynch was one of the men who were accustomed to use the track, or that he was with the men who were so using the track. There is no allegation here, or in any other part of the complaint, so far as we can discover, that Lynch was in the steam, or on the track at some place other than the public crossing.

Paragraph 6 appears to be an attempt to lay a foundation for the conclusion that Lynch was a licensee, and, viewed in that light, those allegations relating to the highway crossing become immaterial, because, if Lynch was on the highway crossing, he was in a place where he had a right to be. In view of the allegation that the steam was so dense that Lynch could not be

seen in any event, the allegation that the caboose was ahead of the locomotive appears to be immaterial. Paragraph 7 alleges that the "defendant railway company, * * * without blowing the whistle at the said crossing, and without looking ahead of the engine or caboose, and in great disregard of human life, attached a certain caboose in front of an engine, and ran from the north over the said crossing of a certain public highway, at the rate of twenty miles an hour, and by their gross negligence and wanton disregard of human life did kill Timothy P. Lynch, while the said Lynch was acting with due care on his part, by running over the said Lynch, by having their said caboose attached in front of the said engine, while the engine was running at the rate of twenty miles an hour." Then follows paragraph 8, as follows: "That the said railway company and its servants, well knowing the negligence of the said mining company by exhausting its steam, and well knowing it would be impossible for a person to get off of its track while in the said steam, did not ring the bell and did not blow the whistle a distance of from fifty to eighty rods from the said crossing."

It will be observed that while the foregoing paragraphs do not expressly aver that Lynch was on the crossing, they do so by implication, and if the contention were made that the complaint states a cause of action for negligent killing at a public highway crossing, we should feel obliged to give it serious consideration. But no such contention is advanced, and it would be manifestly unjust to the plaintiff for this court to force upon her a cause of action to which she makes no claim, and which she could, probably, not prove. And the allegation that Lynch was a licensee seems to negative the idea that he was on the crossing. But our embarrassment is not thereby removed, because plaintiff's counsel contend in their brief that it was the duty of the railway company's servants to sound the whistle and ring the bell at the crossing. If Lynch was not on the crossing when struck, the neglect to give signals of warning at the crossing two hundred feet away was not a breach of any duty the company owed him in the place where he was. (*Toomey* v. *Southern Pacific Ry. Co.,* 86 Cal. 374, 24 Pac. 1074,

10 L. R. A. 139; *Morgan* v. *Wabash Ry. Co.*, 159 Mo. 262, 60 S. W. 195-200; *Elwood* v. *New York etc. R. R. Co.*, 4 Hun (N. Y.), 808; Thompson on Negligence, sec. 1707.) But, despite the position of counsel, it seems to us that the most definite allegations in the complaint, if we may be allowed the expression, have a greater tendency to locate Lynch at the crossing than elsewhere. But, again, this position seems untenable because of the allegation in paragraph 6 that the crossing therein referred to was two hundred feet north of the point where the injury took place. Paragraph 9 of the complaint speaks for itself, and we, therefore, refrain from comment upon it. Paragraph 10 is an allegation of duty on the part of the railway. One averment is that "it was the duty of the railway company to refrain from wantonly killing any human being on its track, and in order to observe said duty, it would be necessary * * * to blow its whistle or ring its bell in approaching said steam." There is no allegation that the company did not observe this duty, or that Lynch was in a place where an observance of the duty would have enabled him to avoid the injury.

We find no causal connection between any of the acts complained of and the result to Lynch, and are unable to determine what was the proximate cause of his death. Not only that, but if we may assume, which we may not, that Lynch was killed while in the steam, he appears to have voluntarily gone into a place of known danger, and the allegation that he acted with due care does not relieve the plaintiff, when she assumes to state all the surrounding facts and circumstances, from the necessity of also showing the exact place of the accident, to the end that the court may judge whether or not his negligence contributed to the result. On the face of the complaint the deceased appears to have been guilty of gross negligence, and whether or not such negligence on his part was a proximate cause of his death depends primarily upon the location of the place where he was at the time; and the accountability of the defendants also depends upon that, because, if they owed him any duty at

all, the nature of such duty would vary, dependent upon the place of the accident.

The judgment appealed from is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied April 24, 1909.