[Civ. No. 3523. Third Appellate District.—May 22, 1928.]

M. J. FLYNN et al., Respondents, v. THE BLEDSOE COMPANY (a Corporation), Appellant.

Sweet & Plank and Franklin A. Plank for Appellant.

Chester Allen Smith for Respondents.

PLUMMER, J.—The plaintiffs had judgment against the defendant on account of personal injuries sustained by Coranna Flynn by reason of a collision between a Ford car in which said plaintiff was riding and a parked truck belonging to the defendant. From this judgment the defendant appeals.

The record shows that about noontime on June 14, 1924, Raymond Flynn, the son of the plaintiffs, was driving a Ford car along a certain street in the city of San Diego, known as and called "C" Street, between Sixth and Seventh Streets. The mission on which the son was driving was to get his father and bring him home to lunch. The plaintiff Coranna Flynn was riding with him as his guest, upon his invitation. "C" Street is a public thoroughfare in the city of San Diego fifty-two feet wide from curb to curb, and extends in an easterly and westerly direction. The defendant at that time was conducting a business on the north side of "C" Street between Sixth and Seventh Streets, and at the time mentioned had a truck eighteen feet and four inches in length parked on the north side of said street, the truck being parked almost at an angle of ninety degrees with the north line of "C" Street. The truck was about six feet in height. The body of the truck was nineteen and one-half inches from the bed of the body to the top of its sides. On each side of the top of the body of the truck there were two loading rails or sills, two inches by three inches, extending along the full length of the truck, and from ten to eighteen inches to the rear end of the body. The projecting ends of these sills were supported by steel rods or braces. The body of the truck was painted red. The rails or loading sills were covered with two layers of green carpet. The front wheels of the truck were about six inches from the curb. At the time in question a build-

ing was being erected on the south side of "C" Street, and building material and equipment extended out into the street from ten to twelve feet north of the south curb line. At the time under consideration the street was filled with a continuous stream of traffic both easterly and westerly. Raymond Flynn, seated on the left or driver's side of the Ford car, was driving in a westerly direction. His mother, accompanying him, was seated on the right side of the car. In driving along the street above named the Ford car came in contact with the projecting sills on the parked truck, the projecting sills coming in contact with the door on the right-hand side of the Ford sedan, breaking the glass and otherwise injuring the car. The breaking glass wounded the plaintiff Coranna Flynn and the judgment awarded her compensation therefor. At the time involved in this action, section 15 of the traffic ordinance of the city of San Diego read as follows:

"Section 15. Parking at an angle. On all streets where there are no street railway lines in operation, and on all streets or portions of streets having a width of 85 feet or more from curb line to curb line, vehicles when parked at the curb shall stand at an angle of approximately forty-five degrees to the curb with the front of such vehicle towards the curb and with the right front wheel of such vehicle not farther than six inches distant from the curb line; provided, all vehicles parked under this section shall be so parked that no portion of such vehicle shall extend beyond the prolongation of the property line adjacent to and parallel with the nearest curb line of the nearest intersecting street." There is no railroad on "C" Street.

The complaint originally was in two counts, one based upon negligence of the defendant in parking its truck contrary to the provisions of the ordinance just quoted. The second cause of action was based upon negligence in parking its truck in such a manner as to render the projecting sills dangerous to traffic, etc. To this complaint the defendant filed a general demurrer in the following language: "That said complaint does not state facts sufficient to constitute a cause of action against this defendant," and then added three specifications of ambiguity, uncertainty, and unintelligibility directed against the first cause of action. The trial court overruled the demurrer as to the first cause of

action and sustained the demurrer as to the second cause of action set forth in the plaintiffs' complaint. In so doing it must have overlooked the rule set forth in 21 California Jurisprudence, page 17, section 76, supported by a long line of California cases to the effect that where a complaint sets forth two causes of action and a general demurrer is filed directed to the whole complaint, and one of the causes of action is sufficient, "a general demurrer to the complaint containing more than one count should be overruled if there is one good count stating a cause of action." However, as the plaintiff proceeded to trial upon the first cause of action, we are necessarily confined only to what is stated in the first count. Upon this appeal it is urged that the evidence is insufficient to support the verdict; that it shows no negligence on the part of the defendant; that the manner of parking the truck was not the proximate cause of the collision; that the driver, Raymond Flynn, was guilty of contributory negligence; that the trial court erred in admitting in evidence the traffic ordinance of the city of San Diego; and also that the trial court erred in its instructions to the jury. Some of these objections are presented in different forms, but need not be considered in their variations.

The negligent manner of parking the truck in this case, in violation of the traffic ordinance of the city of San Diego, is the gravamen of the charge. The ordinance in question requires vehicles to be parked at an angle of approximately forty-five degrees to the curb with the front of the vehicle towards the curb and not farther therefrom than six inches. The testimony is practically undisputed that the automobile, eighteen feet four inches in length, was parked practically at right angles to the curb. This is set forth as negligence *per se.* The defendant's violation of the ordinance is practically admitted, but it is urged in avoidance that the plaintiff is not in a position to take advantage of the violation of such ordinance, and in this particular, advances the argument that the traffic ordinance requiring vehicles to be parked at an angle of forty-five degrees was enacted for the purpose of subserving the convenience of the parking public, that is, to provide a parking system which would accommodate a greater number of automobiles than if such vehicles were permitted to be parked at right angles with the curb line. In support of this contention the appel-

lant cites 19 California Jurisprudence, 635, section 66, which reads: "A violation of a statute or ordinance within the above rule is actionable negligence only as to those persons for whose benefit or protection it was enacted, and if a plaintiff does not come within that class, a violation does not supply the element of duty owing." And, also, the case of *Corbett* v. *Spanos*, 37 Cal. App. 200 [173 Pac. 769], relative to a fire ordinance prohibiting certain coverings for stairways, and also the case of *Toomey* v. *Southern Pac. R. R. Co.*, 86 Cal. 374 [10 L. R. A. 139, 24 Pac. 1074], relating to signals at crossings where the injury to the plaintiff did not occur at a crossing. The parking of a vehicle eighteen feet and four inches in length diagonally on a crowded street of a city is a complete answer in and of itself to the appellant's contention that the traveling public, using said street, was not intended to be benefited by the ordinance under consideration. We cannot exhibit parked automobiles in this opinion, but one glance at the photographs in the record of the defendant's truck with its projecting sills is a stronger argument than mere words as to what was or is included within the intent and meaning of the parking ordinance of the city of San Diego. Obstruction to a street is a serious menace to the automobile public and is as great a consideration as could be presented to a city council to induce the enactment of an ordinance which would tend to minimize the obstruction thereof by parked vehicles.

We cannot shut our eyes to the common knowledge possessed by everyone, that automobile drivers on our crowded city streets must keep close watch of oncoming traffic in order to avoid collision therewith, and we cannot assume that the members of the city council of the city of San Diego were any less conscious of this necessity than other people, and, therefore, did not have in mind the safety of the general traveling public when enacting an ordinance which, if complied with, would give the widest possible space usable for moving vehicles. The natural inference would be that the members of the city council had all these matters in mind and intended by the ordinance to afford to the traveling public the maximum possible degree of safety. To do this, the parking of vehicles on the street would necessarily have to be so aligned as to limit to the least

degree all obstructions. The cases relied upon by appellant do not limit in the least what we have here said. In the case of *Toomey* v. *Southern Pac. R. R. Co.*, 86 Cal. 374 [10 L. R. A. 139, 24 Pac. 1074], it was sought by the appellant to invoke the protection of a statutory provision requiring the ringing of a bell or blowing of a whistle when a train drawn by a steam locomotive was approaching a crossing, and, therefore, as the plaintiff was upon defendant's railroad track within a distance of a crossing where he would have heard the signal had it been given, he could have avoided injury. The court held, as it could not reasonably hold otherwise, that the requirement of giving the signal was for the safety of the general public using the crossing in question, and not for the benefit of trespassers upon the defendant's property who might be near enough to the crossing to hear such signal. In *Corbett* v. *Spanos*, 37 Cal. App. 200 [173 Pac. 769], the ordinance in question related to the manner in which stairways, etc., should be covered, had nothing to do with the general public, and was a matter of fire protection only.

Appellant, in further attack upon the traffic ordinance of the city of San Diego, insists that it is void as being in conflict with section 136 of the Motor Vehicle Act of 1923. Section 136 of the Motor Vehicle Act, so far as pertinent here, reads as follows: "Stopping on highway. No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway, outside of a business or residence district when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon." (Stats. 1923, p. 561.) To support this contention appellant cites the case of *In re Murphy*, 190 Cal. 286 [212 Pac. 30], which refers to the case of *Ex parte Daniels*, 183 Cal. 636 [21 A. L. R. 1172, 192 Pac. 442]; cited in *In re Mingo*, 190 Cal. 769 [214 Pac. 850]. These cases, however, are based upon subdivision "D" of section

22 of the Motor Vehicle Act (Stats. 1919, p. 191), as it read prior to the act approved May 30, 1923. (Stats. 1923, chap. 266.) The subdivision to which we have referred, and upon which the cases cited were founded, expressly made the provisions of the Motor Vehicle Act exclusive as to the subjects mentioned in the subdivision, to wit, regulation of speed, etc. Subdivision "D" of section 22 of the act, upon which the cases cited were based, by its very terms excluded city legislation upon certain subject matters which were dealt with by the section. Section 136 of the Motor Vehicle Act of 1923 relates to stopping upon the highway, and does not contain one word as to the manner of parking vehicles within the corporate limits of cities and towns. It does not purport to be exclusive upon that subject, but is absolutely silent thereon. It requires only a casual reading of section 136 of the Motor Vehicle Act of 1923 to enforce the conclusion that the legislature had in mind only the stopping of motor vehicles on highways outside of cities and towns where the improved portion of the highway would be confined to a comparatively narrow portion thereof, leaving ample space on both sides of the improved strip for stopping automobiles or other vehicles needing immediate repair or mechanical adjustments. Nor does section 145 of the Motor Vehicle Act of 1923 in any particular limit or control the power of cities relative to the method or manner of parking automobiles upon the streets thereof. Section 145, *supra,* has to do with the movement of traffic, the safeguarding of crossings and the installation of signal devices, etc. This legislation partakes of, and is akin with, the section of the Motor Vehicle Act relating to the speed at which vehicles may be propelled, and gives cities authority to legislate upon that subject in so far as it pertains to crossings or intersecting portions of the streets. The legislature not having legislated as to the method or manner of parking vehicles on the streets of cities and towns, there can be no conflict created by a city ordinance regulating the same. It follows, therefore, that we have no need of reviewing cases having to do with a conflict between a city ordinance and an act of the legislature.

That violation of a parking ordinance of the city of San Diego was negligence *per se* is amply supported by the cases of *Berkovitz* v. *American Gravel Co.,* 191 Cal. 195

[215 Pac. 675]; *Scragg* v. *Sallee,* 24 Cal. App. 133 [140 Pac. 706]. See, also, page 144 of 24 Cal. App. [140 Pac. 710], where this court held that driving in excess of the speed limit was negligence *per se* in an action involving an injury caused by an automobile when traveling at an unlawful rate of speed. To meet this situation appellant argues that the negligent parking of the defendant's automobile with the projecting loading sills was not the proximate cause of the injury, arguing that other automobiles had passed by without being impaled on the projecting sills. It is, of course, true that if the plaintiff had not been riding on "C" Street between 6th and 7th Streets in the city of San Diego at the time in question, she would not have been injured. The logic of the appellant, therefore, applied to this case would be that the plaintiff Coranna Flynn was guilty of a contributory act of negligence in riding on "C" Street. The fact is that said plaintiff was where she had a right to be, and the projecting sills of the defendant's truck were where the defendant had no legal right to place them. It would scarcely relieve a defendant from negligently placing a pile of stones upon a highway by insisting that the stones were stationary, and that an automobile driver who did not see them in time to avoid an injury was solely responsible for the same on account of his contributory negligence. As stated in 19 California Jurisprudence, page 556, section 9, there is a distinction between proximate cause in law and proximate law as reasoned out by a logician. The latter portion of the section referred to is applicable here: "There can be no liability for negligence which is not the cause of the injury complained of, but to impose liability it is not necessary that the negligence be the sole cause, for one is liable if his act concurs with that of another in producing the injury, and a primary cause may be the proximate cause though it operate through successive instruments." Here the liability of the defendant is on account of its negligence in parking the automobile. Without this negligent act the lawful act of the driver of the automobile in traversing "C" Street would not have resulted in any injury. Thus the proximate cause of the injury was the wrong of the defendant in leaving an automobile parked in such a manner as to be dangerous to the traveling public. The only possible theory upon

which contributory negligence might be charged against the automobile driver would be that he should have, as a reasonable person, seen the projecting sills in time to have avoided the collision. This, of course, was a question of fact submitted to the jury and is in no sense a question of law as urged by appellant, and the finding of the jury against the appellant is conclusive here. It requires only the mere statement of the question whether an automobile driver, watching the oncoming traffic of a busy street to avoid collision, should or should not have seen the small projecting sills, in addition to observing the large body of the truck, to show it is a question of fact for the jury, and this especially in view of the further fact that the smaller objects might readily have blended with other larger objects so as not to have been easily observed. Again, the height of the truck shows that these projecting sills were somewhat above the range of ordinary vision of the driver of the Ford car in watching the traffic moving in an opposite direction. The fact that others had passed by without injury furnishes no excuse for the defendant. The testimony shows that there was considerable obstruction on the opposite side of the street on account of the presence of building material, that there was a continuous stream of traffic moving in the opposite direction, and it required only a slight deviation of the east-bound traffic to necessitate a corresponding deviation in the line of the west-bound traffic, in which direction the Ford car was traveling, and while a careful and experienced driver could very readily slightly change the course of his machine to avoid oncoming traffic, and also avoid colliding with the rear end of the truck, the projecting sills were in such a position that a collision therewith would be probable even though there was plenty of room for the passage of the Ford car without striking the rear end of the large body of the truck. Under all these circumstances we think it clearly presented a case where the jury was justified in concluding that the negligence of the defendant was the proximate cause of the collision and of the plaintiff's injury. Again, appellant overlooks the question that there is no imputable negligence to the plaintiff Coranna Flynn in this case. There is no evidence to show that Raymond Flynn was acting as her agent. Two cases cited by respondent we think conclu-

sive of this question, to wit: *Bryant* v. *Pacific R. R. Co.,*
174 Cal. 737 [164 Pac. 385], and *Nonn* v. *Chicago City
R. R. Co.,* 232 Ill. 378 [122 Am. St. Rep. 114, 83 N. E. 624].
These cases hold that there can be no imputable negligence
save and except where the driver is acting as the agent of
the injured person. We may here state that the driver of
the Ford car testified that he saw the truck, but did not
observe the projecting sills. The testimony further shows
that the Ford car was moving only between five and six miles
per hour, and that the curved or bulging portion of the
body of the Ford sedan was the portion of the car that came
in contact with the projecting sills.

As a final objection it is argued that the court erred
in refusing the following instructions requested by the de-
fendant, to wit: ''The court instructs you that under the
issues in this case the sole basis of the plaintiff's claim of
negligence on the part of the defendant is the alleged im-
proper parking of defendant's truck; and I further instruct
you that the presence of any projecting sills or beams or
sticks of wood at the rear of the body proper of the truck,
or any other feature of its construction is not to be regarded
by you as any element whatever of negligence in this case.''
And further, that ''Where the evidence is as consistent
with a neglect of duty or ordinary care on the part of
Raymond Flynn as it is with neglect of duty or ordinary
care on the part of the defendant, then plaintiffs cannot
recover in this action.'' We do not very well see how there
could be any division in the negligent parking of the truck.
The whole vehicle, including running-gear, body, and pro-
jecting sills, constituted the one instrumentality placed in a
position dangerous to the traveling public. It may be ad-
mitted that if the truck of the defendant had no projecting
sills, the negligence of the defendant would have possibly
been less dangerous, but because the truck was so constructed
that negligent parking made it doubly dangerous to the
public is no reason why the jury should not take into con-
sideration the kind of vehicle which was negligently parked.
The truck was there as a whole. It was parked as a whole
and not in separate parts or parcels, and the appellant, by
the proposed instruction, was evidently trying to exclude
from the jury the very reason why its negligent parking
of the truck was the proximate cause of the injury com-

plained of, and to in some manner relieve itself from its negligent conduct. ■ As to the second instruction complained of, there is no testimony upon which to predicate such an instruction, there being nothing to show that Raymond Flynn was acting as the agent of the injured plaintiff. At the request of the defendant, however, the court did give the following instruction: "The court instructs you that if at the time of the collision involved in this case Raymond Flynn was operating the Ford sedan as the agent of the plaintiff M. J. Flynn, and that if you find from the evidence that the collision was proximately caused, in even the slightest degree, by the failure of the said Raymond Flynn to use due care and caution in the operation of said Ford sedan, at and immediately prior to such collision, then you must render your verdict for the defendant." Thus the appellant had given to the jury everything to which it was entitled in the way of instructions, and more than the testimony called to our attention justified.

The appellant assigned as error the denial of the court to grant its motion for a nonsuit, and also its motion for a directed verdict. It also presents some other objections, but they are only repetitions and variations of the objections which we have considered, and therefore do not merit any separate setting forth in this opinion.

The judgment is affirmed.

Finch, P. J., and Bartlett, J., *pro tem.*, concurred.