[Civ. No. 708. Fourth Appellate District.—June 19, 1931.]

NAOMI BEESON, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Ben F. Griffith and Hugh W. Darling for Appellant.

Jess E. Stephens, City Attorney, Frederick von Schrader, Assistant City Attorney, and Erwin P. Werner, Deputy City Attorney, for Respondent.

MARKS, J.—Appellant is the mother of Hal Beeson, who was on May 29, 1926, a minor of the age of ten years. On this date he was playing in a storm drain near the intersection of Venice Boulevard and LaBrea Avenue in the City of Los Angeles, fell into a water hole and was drowned. His father, Hal L. Beeson, presented a claim for damages for the death of his minor son to the city council of the City of Los Angeles on August 30, 1926, which claim was disallowed and payment thereon refused. Thereafter, on or about September 30, 1927 (probably 1926) he deserted and abandoned appellant.

On or about May 24, 1927, appellant filed her action in the court below to recover damages for the death of her minor son. It does not appear that she ever filed a claim or demand for these damages with respondent or any of its boards or officers. She alleges the presentation and rejection of the demand made by her husband.

Respondent filed a general and special demurrer to appellant's complaint, which was sustained with leave to amend. On March 28, 1928, she filed her amended complaint, to which respondent again demurred both generally and specially. The demurrer was sustained and she was given ten days within which to amend. She did not avail herself of this opportunity, and from the judgment entered in favor of respondent she has prosecuted this appeal.

The portions of the amended complaint to which we need to direct our attention, other than the allegations of the

124

presentation of the claim or demand by Hal L. Beeson and its rejection, are as follows:

"That the defendant, The City of Los Angeles, on the said May 29th, 1926, and for more than one year prior thereto, while in possession, management and control of aforesaid boulevard, avenue, storm drains, sewers and conduits, did at all of said times knowingly, unlawfully, wrongfully and negligently keep and maintain, suffer and permit to be and remain in and upon said Venice boulevard, at or near its intersection with said LaBrea avenue, an open storm drain, sewer or conduit, easily accessible by reason of its sloping and caved-in sides, of the depth of about twenty (20) feet, and about twenty (20) feet wide, and over a mile long, and in the bottom of which was permitted to and did stand and/or flow muddy and/or silt stained and/or debris covered water (because of continuous caving in of the said public streets and pavements of the said Venice boulevard and LaBrea avenue) to a depth of about one (1) foot, except at one particular place in aforesaid open storm drain, sewer or conduit and at aforesaid location, to-wit: at or near the said intersection of said Venice boulevard and LaBrea avenue, and immediately westerly from a concrete conduit opening and emptying into aforesaid open storm drain, sewer or conduit, where there was a pit, reservoir, sink, trap or hole, wholly concealed, covered, hidden and camouflaged by aforesaid muddy and/or silt stained water and/or debris from the cavings in of aforesaid streets and pavements, and caused in part, if not altogether, by a dam made of the debris of earth and concrete pavement caving into the same from said neglected avenue and boulevard as aforesaid, and of the depth of about seven (7) feet, and about six (6) feet wide and about eight (8) feet long, all without any signs, notices, guard, wiring or protection whatever over or around the same, and without any inclosure to separate the same from the remaining portions of aforesaid public streets, boulevard and avenue, and/or from the sidewalks of said Venice boulevard and/or LaBrea avenue as aforesaid, and without being filled, at least to the level of the balance or rest of aforesaid storm drain, sewer or conduit, with the immediately available debris, earth and concrete sections of aforesaid boulevard and avenue, that then and there, and at all the times herein mentioned were and are piled in aforesaid storm drain, sewer

and conduit and around aforesaid hole or reservoir because of having caved in and fallen there from the unprotected, uncared for, disintegrated and unreinforced sides and paved parts of aforesaid public streets, boulevard and avenue, or aforesaid dam removed or cut or opened or drained, and in an unguarded, negligent and dangerous condition.

"That plaintiff is informed and believes, and because of said information and belief, alleges the facts to be that on or about May 1st, 1925, and continuously thereafter until and including May 29th, 1926, the governing and managing board of the defendant, The City of Los Angeles, its City Council, its city engineer, its Board of Public Works, its mayor, its street superintendent, its street department, and its boards, officers, agents and persons, each and all having authority to remedy the dangerous and defective conditions herein set forth, each and all had and received knowledge and notice, by personal inspection, by personal supervision, by written and oral reports and petitions of citizens of the City of Los Angeles, and by published newspaper reports and articles, of the defective and dangerous condition of Venice boulevard and LaBrea avenue, and their respective and inclusive grounds, works and property, and particularly of said concealed and hidden pit, reservoir or hole of the said exceptional depth of seven (7) feet, located at the point and/or place herein described in aforesaid open storm drain, sewer or conduit; that the defendant, The City of Los Angeles, has at all times since May 1st, 1925, failed, refused and neglected to remedy the condition herein described and/or to take any action whatsoever to protect the public, and particularly the person of Hal Beeson, deceased, against such dangerous and defective condition; by reason of which said wrongful, unlawful and negligent acts and omissions of said defendant, The City of Los Angeles, its governing and/or managing board, its officers, agents and servants, in suffering and permitting the aforesaid pit, reservoir, sink, trap or hole to the depth of about seven (7) feet to be and remain at all the times herein mentioned at and upon the public premises as aforesaid, and in permitting the same to be and° remain in said open and dangerous condition, as aforesaid, and for want of a sufficient fill-in, outlet, cut, opening, drain, warning, notice, guard, covering and protection around same, or a fence or inclosure separating it from the rest of afore-

said Venice boulevard and LaBrea avenue, or any notice, fill-in, outlet, cut, opening, drain, warning, guard, covering or protection whatever, and by reason of the defendant, The City of Los Angeles, extending at all the times herein mentioned to the said Hal Beeson and all other children, an invitation, express and/or implied, to play, wade and bathe in aforesaid open storm drain, sewer or conduit as aforesaid and particularly in and around said seven (7) foot hole described and located and in the condition as aforesaid, and controlled and maintained by the said defendant, The City of Los Angeles, which said invitation said defendant then and there and at all times herein mentioned well knew, by notice and knowledge from the same sources and at the same time as aforesaid knowledge and notice of aforesaid defective and dangerous street conditions were had, given and received, was being and had been at all the times herein mentioned, accepted and used by the children of the City of Los Angeles, singly and in groups, and that it was and at all' times herein mentioned has been, by reason of aforesaid invitation, no uncommon sight to see from the public streets above named, thirty (30) and more, at a single time, minor children attracted to and playing, bathing and wading in aforesaid open storm drain, sewer and conduit at aforesaid location, the plaintiff's minor child to-wit: Hal Beeson, age ten years, without any knowledge on his part that the same existed and wholly unaware of any danger and without any fault or want of care on the part of plaintiff or Hal L. Beeson, husband of plaintiff and father of Hal Beeson, and upon the first visit thereto by said Hal Beeson fell into aforesaid seven (7) foot deep hole, pit, trap or reservoir, and was then and there on said May 29th, 1926, drowned therein, and was taken out of the same dead."

In the original briefs of both parties the cause was argued strictly and solely from the point of view of the doctrine of an attractive nuisance. Appellant rested her cause largely upon the case of *Sanchez* v. *East Contra Costa Irr. Co.*, 205. Cal. 515 [271 Pac. 1060], and seriously urges that under this decision the allegations of her amended complaint bring the case squarely within the attractive nuisance doctrine.

We have reached the conclusion that this doctrine does not apply to the facts alleged by appellant. In order to constitute an attractive nuisance there must be an appli-

ance or contrivance that is artificial, uncommon, dangerous and constituting a trap for a young child, which can be made safe easily and without destroying its usefulness. As was said in *Morse* v. *Douglas*, 107 Cal. App. 198 [290 Pac. 465]:

"The doctrine of attractive nuisance cases grew out of injuries to children upon turntables maintained by railroads upon their own properties. It has been the subject of sharp differences of judicial opinions in different jurisdictions. Since the decision of the case of *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 [25 Am. St. Rep. 186, 27 Pac. 666], the courts of California have taken the humanitarian side of the controversy and have held the owner of machinery and appliances both dangerous and attractive to children of tender years and immature experience, liable for damages following injury to them, where there was a failure on the part of the owner to use ordinary care in safeguarding such machinery and appliance."

"The contrivance must be artificial and uncommon, as well as dangerous, and capable of being rendered safe with ease without destroying its usefulness, and of such a nature as to virtually constitute a trap into which children would be led on account of their ignorance and inexperience. The principle of the rule having been recognized and firmly established in this state, it has been applied to a variety of machines, appliances and contrivances coming within this definition. (*Barrett* v. *Southern Pac. Co.*, *supra; Cahill* v. *Stone & Co.*, 153 Cal. 571 [19 L. R. A. (N. S.) 1094, 96 Pac. 84]; *Cahill* v. *E. B. & L. A. Stone Co.*, 167 Cal. 126 [138 Pac. 712]; *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176 [118 Pac. 700]; *Skinner* v. *Knickrehm Co.*, 10 Cal. App. 596 [102 Pac. 947]; *Bradley* v. *Thompson*, 65 Cal. App. 226 [223 Pac. 572]; *Sandberg* v. *McGilvray-Raymond Co.*, 66 Cal. App. 261 [226 Pac. 28]; *Faylor* v. *Great Eastern etc. Co.*, 45 Cal. App. 194 [187 Pac. 101].)"

The case of *Hernandez* v. *Santiago Orange Growers Assn.*, 110 Cal. App. 229 [293 Pac. 875], and the cases therein cited amply support this rule.

The facts of the case of *Sanchez* v. *East Contra Costa Irr. Co.*, *supra*, easily distinguish it from those of the instant case. In the Sanchez case the defendant maintained an open irrigation ditch about three feet deep through which it

conveyed irrigation water to its consumers. In the bottom of this ditch there was constructed an unprotected and unguarded siphon down which the water rushed. While the plaintiff's minor son was playing in the water of the ditch he fell into, or was sucked into, this siphon and was drowned. This state of facts brings this case within the attractive nuisance doctrine as announced and established in California. The siphon was a contrivance or appliance constructed by the owner of the ditch and was a hidden danger and a trap for a young and inexperienced child. It was artificial and not natural. Its dangers could have been guarded against easily without destroying or even affecting its usefulness.

In the instant case the pool was not a contrivance or an appliance created by an act of the owner of the property. It was caused either by the water falling into the drainage ditch from the cement drain or by the banks of the ditch caving in and forming a dam, probably by both.

It has been repeatedly held in California that a pond, excavation, or pool of water is not an attractive nuisance under the definition of the term adopted here. (*Loftus* v. *Dehail*, 133 Cal. 214 [65 Pac. 379], *Peters* v. *Bowman*, 115 Cal. 345 [56 Am. St. Rep. 106, 47 Pac. 113], and *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal. App. 624 [174 Pac. 414, 418].) In the last case the court said: "A pond of water, it may be conceded, is always attractive to youngsters, but the dangers connected with and inherent in a lake or pond of water, natural or artificial, are obvious to everybody— even to a child old enough to be permitted by its parents to go about and play unattended upon the streets or in the public parks. It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death. But there is no necessity for abstract reasoning upon the proposition, for we think it thoroughly settled by the decisions that a pond of water, whether natural or artificial, is not to be included in the same class with turntables and other complicated machinery the inherent dangers of which are not obvious to a child."

In a supplemental brief filed here, respondent maintains the amended complaint is insufficient because it is

therein alleged that the claim or demand for the damages resulting from the death of Hal Beeson was filed with the city council of the City of Los Angeles and not with the board of public works as required by the city charter.

Section 231 of the charter of the City of Los Angeles vests in the board of public works "all the duties that are now, or may hereafter be, conferred or imposed by law upon the street superintendent". Section 234 of the charter vests in the board of public works: "Charge, superintendence, and control . . . ; of the construction and maintenance of all streets . . . ; of all work and improvement in, on, over or under such streets, places and property; of the design, construction and maintenance of all sanitary and storm sewers and drains of the city and all connections therewith, . . . ; and said Board of Public Works shall have power to proceed with all such construction and maintenance, and to carry out any of the purposes herein mentioned from any funds under its control and available for such purposes."

Section 363 of the charter is as follows: "Every claim and demand against the city, except as provided in the preceding section, shall be first presented to and approved in writing by the board, officer or employee authorized by this charter to incur the expenditure or liability represented thereby. In all cases the date of such approval shall be given."

The case of *Continental Ins. Co.* v. *City of Los Angeles,* 92 Cal. App. 585 [268 Pac. 920], supports the contention of respondent that as a necessary prerequisite to the maintenance of this action the claim or demand should have been presented to the board of public works of the City of Los Angeles as required by the city charter. In the Continental Insurance case the court said:

"Under the view we entertain it is unnecessary for us to determine whether the city may be sued for the acts or omissions of the board for the reason that the other point raised by respondent on this appeal is that under the provisions of the charter no suit may be brought for money or damages on account of a wrongful act or omission in the department of public service unless and until a demand therefor has been made on the board of public service commissioners, and has been rejected in whole or in part as provided in the charter, and that such a demand is a prerequi-

site to the bringing of such a suit against either the city or such board.

" 'A presentation of a demand as a condition precedent to the beginning of an action against a municipal corporation, and a special provision limiting the time thereafter in which such action may be brought, are measures which, without doubt, the legislature may ordain. Thus the provision of the Los Angeles charter, which, in slightly varying form, is common to most charters, is a reasonable and valid provision as a condition precedent. That charter provides (sec. 222) : ''No suit shall be brought upon any claim for money or damages against the city of Los Angeles . . . until a demand for the same has been presented as herein provided and rejected in whole or in part.'' (*Farmers & Merchants' Bank* v. *Los Angeles*, 151 Cal. 655 [91 Pac. 795].)' (*Geimann* v. *Board of Police Commrs.*, 158 Cal. 748 [112 Pac. 553].)

"It seems well settled, and for sound reasons, and is not denied by appellants, that the presentation of a demand in the manner prescribed by law is a necessary prerequisite to the beginning of such actions as the present one, and it follows that if the complaint failed to allege that this was done it failed to state a cause of action and the demurrer was properly sustained on this ground alone. The complaint contains an allegation that the demand in this case was presented to the city council and by them rejected before this action was begun. This squarely presents the question of whether the presentation of the demand to the city council was a compliance with the law and the provisions of the charter, as contended by appellants, or whether the demand under those provisions should have been presented to the board of public service commissioners, as contended by respondent.

"In the instant case the demand should have first been presented to the board of public service commissioners before action was brought. This was not done and no allegation that it had been done was contained in the complaint, and the demurrer was properly sustained.''

This rule finds support in the following cases: *Crescent Wharf etc. Co.* v. *Los Angeles*, 207 Cal. 430 [270 Pac. 1028], and *Spencer* v. *Los Angeles*, 180 Cal. 103 [179 Pac. 163].

■ Appellant has filed a supplemental reply brief in which she seeks to escape the results of her failure to allege that the claim was presented to the board of public works of the City of Los Angeles, on the ground that this defect in the pleadings was not urged in the court below. She urges that she should be given the opportunity to amend and allege a proper presentation of her demand to the board of public works. There might be some force in this contention did it not appear from the arguments used by her counsel in this supplemental brief that the claim or demand was in fact presented to the city council and not to the board of public works.

■ In this supplemental reply brief appellant for the first time urges the liability of respondent for negligence in the operation of its works used in a proprietary capacity and also under the provisions of section two of an act approved June 13, 1923 (Stats. 1923, p. 675), which is as follows: ''Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

Since the passage of this act a number of cases have been decided under its provisions. While it is not necessary to review all of them, the following throw considerable light upon the construction placed upon it. (*Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118]; *Maede* v. *Oakland High School Dist.*, 212 Cal. 419 [298 Pac. 987]; *Damgaard* v. *Oakland High School Dist.*, 212 Cal. 316 [298 Pac. 983]; *Roberts* v. *Pacific Gas & Elec. Co.*, 102 Cal. App. 422 [283 Pac. 353]; *Gorman* v. *Sacramento County*, 92 Cal. App. 656 [268 Pac. 1083]; *Benton* v. *City of Santa Monica*, 106 Cal.

App. 339 [289 Pac. 203]; *Brooks* v. *City of Monterey,* 106 Cal. App. 649 [290 Pac. 540]; *Adams* v. *Southern Pac. Co.,* 109 Cal. App. 728 [293 Pac. 681].)

In all of the cases thus far decided the injured party was using the street in which he was injured, or the property which caused the injury, in the usual and ordinary manner in which it was contemplated that the street or property would be used. We are of the opinion that in passing and adopting section two of the act approved June 13, 1923, the legislature intended to limit the liability of the city for damages resulting from defective streets, works or property to damages suffered in the ordinary, usual and customary use thereof. As was said in the case of *Commonwealth* v. *Allen,* 148 Pa. St. 358 [33 Am. St. Rep. 830, 16 L. R. A. 148, 23 Atl. 1115]: ''As a general rule, highways and bridges are constructed for ordinary use, in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed or by the passing of a very large and unusual weight. A township is not bound to do more than to so construct its bridges as to protect the public against injury by a reasonable, proper, and probable use thereof, in view of the surrounding circumstances, such as the extent, kind, and nature of the travel and business over them.''

The storm drain, as its name would imply, was undoubtedly constructed to carry off surface, storm and drainage waters. It was not constructed as a playground for children. Under the authorities which we have cited, the very fact of its size, twenty feet in depth and twenty feet in width, with water in its bottom, would carry a notice of its dangers to a child of the age of the deceased. The child did not fall into it while using the street, or from the street, but climbed into it to use it as a playground. We do not believe that the city is required to guarantee the safety of its streets or other public works when they are used for unusual purposes inconsistent with those for which they were intended. The city should not be made a guarantor for the safety of its storm drains when used as a playground by children when their very nature would indicate the dangers in them and when the dangers do not come within the attractive nuisance doctrine as established by the courts in this state.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 17, 1931.