[Civ. No. 4857. Third Appellate District.—November 6, 1933.]

RAYMOND LAMBERT, a Minor, etc., Appellant, v. WESTERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Respondents.

Ware & Ware for Appellant.

C. W. Dooling and Edwin V. McKenzie for Respondents.

PULLEN, P. J.—This is an action for personal injuries suffered by plaintiff.

To the complaint defendants interpose general demurrers which were sustained with leave to amend. Plaintiff declined so to do, and judgment of dismissal was entered, from

which plaintiff appeals. It is, therefore, as to the sufficiency of the complaint that we now direct our attention.

From the allegations of the complaint it appears that Raymond Lambert, at the time the injuries were received, was a boy of normal intelligence, 12 years of age, living in the camp of the Utah Construction Company about 500 feet from the north portal of Tunnel No. 7 on the line of construction of the Western Pacific Railroad Company in Plumas County. Construction work was still in progress. No regular trains were running; a telephone pole line had just been erected along the right of way and over the tunnel. In the construction of the pole line, the defendants used dynamite for blasting the pole holes, and exploded the dynamite with fuses and caps.

At a point on the right of way of the railroad company and immediately adjacent to the top of the north portal of the tunnel, it is alleged that defendants carelessly and negligently left two empty wooden boxes and some loose dynamite caps scattered upon the ground. The complaint also alleged that the caps were abandoned and left behind by the construction crew of the defendants, and the defendants knew of the dangerous compound of which the caps were made; that they were extremely dangerous to the life and limb of anyone who might handle them.

The point at which the dynamite caps and empty boxes were abandoned, so it is alleged, was on an open side of a hill, in view for a long distance of anyone walking along the right of way, which right of way was open and public and commonly used by all persons in the construction camp and by the general public, with the knowledge and consent of the defendants and without warning or prohibition. Plaintiff and other children of the camp were accustomed to play upon the right of way and about the portal of the tunnel with the consent and knowledge of the defendants, and the empty boxes and dynamite caps scattered on the ground constituted attractive and enticing objects for attention and play. The boxes and caps were in no way concealed or safeguarded, and were known to defendants to be attractive to and would arouse the curiosity of children, and tended to invite and induce children of plaintiff's age to go upon the premises and examine the objects there lying. Plaintiff had

previously never seen, examined or played with dynamite caps, nor had he been warned of their injurious nature.

The complaint then alleges that all of the facts and things done by the defendants were done carelessly and negligently and without due regard for the safety of plaintiff, and that defendants knew the attractiveness and injurious nature of dynamite caps, and that they abandoned them in a place frequently resorted to by many people, and that they were scattered about and were an invitation for plaintiff to pick them up. The foregoing, very briefly, is the gist of the cause of action, as alleged in the complaint. Do they, when taken as true, state facts sufficient to constitute a cause of action?

It is the contention of respondents that plaintiff was in law and in fact a trespasser, or, at best, only a licensee, and as such, defendants owed him no duty whatever as to care; and in any event, that he was guilty of a tortious, if not a criminal act, in taking up and carrying away the dynamite caps.

Respondents, in support of the ruling of the trial court sustaining the demurrers, have filed comprehensive briefs, and have fully argued the issues as to the obligations owing by a land owner to trespassers, licensees and invitees, and have fully discussed the doctrine of "attractive nuisances".

For the purpose of testing a question of law, all facts in the complaint well pleaded must be taken as true. In the light of that well-known rule, we must measure the complaint.

We find it alleges therein: "The right of way was open and public and was commonly used . . . by the general public; that it was unfenced and was generally frequented and open and used by the general public . . . with the knowledge and consent of the defendants; that plaintiff and other children . . . were accustomed so to play about . . . the tunnel mouth with the knowledge and consent of the defendants; that from the fact that the blasting operations . . . had moved to another and further section and from the way in which the dynamite caps had been left behind, and from the fact empty and apparently worthless containers were lying on the ground plaintiff believed that said caps and all of the objects there had been abandoned''; that loose caps were, in fact, abandoned and left behind by

the construction crew of defendants; that defendants knew of their explosive and dangerous nature; they were not concealed nor safeguarded; these caps were known to be attractive to children in their play and tended to invite and induce children to go upon the premises and experiment therewith, together with allegations of a similar nature.

We believe, as a matter of law, that a cause of action has been sufficiently stated to present an issue for the jury.

■ It is true, as a general rule, that a land owner is under no obligation to keep his premises in a condition safe for trespassers or licensees. Such persons enter at their own risk, and the only duty owing a trespasser is to abstain from wilfully or wantonly injuring him. (19 Cal. Jur., p. 616.) To that rule is an exception, however, defined as follows:

"One who places a dangerous contrivance in a place frequented by children, and knowing, or having reason to believe, that children will be attracted to it and subjected to injury thereby, owes the duty of exercising ordinary care to prevent injury to them, and this because he is charged with knowledge of the fact that children are likely to be attracted thereto, and are usually unable to foresee, comprehend and avoid the danger into which he thus allures them. One theory upon which the rule seems to be predicated is that the attractiveness of the dangerous contrivance raises an implied invitation to children to go upon the property, and that the owner owes to them the duty which is owing to an ordinary invitee. Another and more generally accepted theory is that, although the children are trespassers, they come within that exception to the general rule that an owner owes no duty to trespassers which imposes liability upon an owner who maintains a trap or concealed danger upon his premises into which he might reasonably anticipate that others may fall." (19 Cal. Jur. 624.)

Counsel for both sides, by their able presentation of the issues, have been able by the elimination of extraneous matters to focus the attention of the court upon the real points of difference. They have agreed that there is no issue as to the allegations of the complaint, nor the respective inferences drawn therefrom, as matters of fact; that there is no issue as to the general law as to trespassers nor the exceptions thereto; that if contributory negligence sufficient to

bar recovery is revealed by the complaint, that point can be raised by general demurrer, and that the cases, particularly of *Nicolosi* v. *Clark,* 169 Cal. 746 [147 Pac. 971, L. R. A. 1915F, 638], *Bradley* v. *Thompson,* 65 Cal. App. 226 [223 Pac. 572], and *Hale* v. *Pacific Tel. & Tel. Co.,* 42 Cal. App. 55 [183 Pac. 280], are binding, if applicable, to the facts in issue.

Let us examine the three cases above referred to. In *Hale* v. *Pacific Tel. & Tel. Co., supra,* the defendant was engaged in the construction of a telephone line. For its use as a storage room for supplies and materials required in the construction work, it occupied an uninclosed cottage in the rear of which was a lattice porch. Upon this porch was a shelf about three feet above the floor, upon which was placed a wooden box, in which beneath some excelsior packing was placed a tin box containing dynamite caps. The top of the wooden box was covered by a board, one end of which was nailed and the other lightly tacked. On a Sunday, while all of the employees of the defendant were absent, a boy entered upon the porch and, seeing the wooden box, pried off the cover, raised the excelsior, and took some of the dynamite caps from the tin container. Some of these he gave to another boy of seven, plaintiff therein, who attempted to use them in a cap pistol, causing the caps to explode, whereby he was permanently injured. The jury awarded damages to him, from which an appeal was taken, and the judgment was reversed by the Supreme Court. This case is distinguishable from the case in issue. The court in its opinion emphasizes the fact that the boy, who abstracted the caps from the box, "knew the nature of his act and the moral turpitude thereof, namely, that he was engaged in the surreptitious taking of property which did not belong to him. In short, that he was engaged in the theft of defendant's property, which he knew was wrong." The court also pointed out, "the facts disclose no element of allurement"; whereas, in the present case, such facts are fully alleged.

In *Bradley* v. *Thompson, supra,* a general demurrer to the complaint was interposed and an order sustaining the same was upheld on appeal. In that case, defendant had used some dynamite caps in blasting holes for planting orchard trees, and the unused caps were placed in a small metal box, and the box placed upon a crossarm of a shed about three

feet above the ground and a few feet from a public road. Plaintiff, while traveling along the public road for the purpose of delivering a newspaper to defendant, was attracted by the metal box, took some of the caps, and in the course of his play, caused one of the caps to explode, to his injury.

There was, as the court says, more than a mere technical trespass, and the injury was the result of the surreptitious taking of the property. The court also points out that the complaint did not allege that plaintiff was upon defendant's premises with the latter's knowledge and consent.

"It may be conceded that had this element of wrongdoing been absent from the case, and had there been naught but a mere technical trespass upon defendant's premises . . . all question as to plaintiff's immaturity of intelligence and foresight . . . would have been foreclosed by those averments in the complaint which allege, in substance, that plaintiff was attracted to the tin box . . . and that he was 'too young and inexperienced to foresee the danger' which might result from playing with the dynamite caps. (*Cahill* v. *E. B. & A. L. Stone etc. Co.*, 153 Cal. 571, 577 [96 Pac. 84, 19 L. R. A. (N. S.) 1094].) But since the injury was the direct result of plaintiff's peculation as well as of his trespass upon defendant's land, the complaint should have contained some averment which would have sufficed to show that this eleven year old boy was ignorant of the moral turpitude involved in his conduct." (*Bradley* v. *Thompson,* 65 Cal. App. 231 [223 Pac. 572, 574].)

In the case at bar, we have nothing more than a mere technical trespass upon land, no surreptitious taking, nor moral turpitude and a positive allegation that the plaintiff was upon the land of the defendants with their knowledge and consent.

In *Nicolosi* v. *Clark, supra,* defendant was a street contractor, and in the prosecution of his work, kept upon the street a large tool-box. This box set about three feet from the sidewalk upon the street, and both the street and sidewalk were open to the public. Within this tool-box was a small box of dynamite caps. Plaintiff, passing along the street, saw the tool-box, and "being a child of tender years, to-wit, 10 years, and being attracted", etc., approached the tool-box and took therefrom the dynamite caps, which ex-

ploded, causing him injury. To this complaint a general demurrer was sustained, the court saying:

"In the case at bar the plaintiff was clearly guilty of trespass, if not of peculation. If a boy of ten years of age is not chargeable with knowledge that he has no right to make free with the contents of a box placed such as this, manifestly a box belonging to other people and containing their goods, it can only be because that particular boy is of deficient intellect and understanding. But this is not alleged. Not being alleged, we hold it plain as a proposition of law, that he was guilty of an unwarranted trespass, barring his right of recovery."

In the case of *Peters* v. *Bowman,* 115 Cal. 349 [47 Pac. 113, 598, 56 Am. St. Rep. 106], the court states the governing principle, but Chief Justice Beatty therein takes occasion to distinguish the pond and excavation cases from the so-called turntable cases, saying:

"The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all the surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumberpile cases, and others of a similar character."

In the Nicolosi case, the boy knowingly took the property of another from its recognized place of storage. There was no element of abandonment or even negligence on the part of defendant, except perhaps, as to the accessibility of the boxes. Although the boy had a right to be in the street, he knew he had no right to place his hand within the box. As suggested by appellant, these cases differ from the in-

stant case, in that there was in the cited cases no allegation of knowledge or consent of defendants, or custom or usage in frequenting the place where the caps were found, and no allegation of abandonment, but rather allegations showing some care, at least, in the storage of the caps.

In *Cahill* v. *E. B. & A. L. Stone etc. Co.,* 153 Cal. 571 [96 Pac. 84, 19 L. R. A. (N. S.) 1094], a boy was injured while playing with a pushcar left unguarded in a public street. Judgment on demurrer was given for defendant. The Supreme Court, in reversing the trial court, said: ''The car being thus rightfully in the street, the plaintiff had no right to go upon it, or to interfere with it in any way, without the consent of the defendants. He would have been, with respect to the car, technically a trespasser, except for the allegation that children were accustomed to play upon it with the knowledge and consent of the defendant.''

So, in the case of *Bransom* v. *Labrot,* 81 Ky. 638 [50 Am. Rep. 193], known as the lumberpile case, cited with approval in *Peters* v. *Bowman, supra,* it was held that children were excused from trespass by reason of their custom and habit of playing where the injury occurred without objection or warning.

It is true, as respondents point out, that to establish negligence in a legal sense, one of the essential elements is a duty on the part of the party charged.

While it is true that a land owner owes no duty to a trespasser or a licensee, except to refrain from a wilful injury, still the invitation to go upon the land may be an implied invitation as well as one expressed, and the allegations of the complaint here are sufficient to show such implied invitation, at least, as against a general demurrer, although probably the right of action more properly falls within the second theory of the exception to the trespass rule, which is, although children may be trespassers, still land owners are liable for the maintenance of a trap or concealed danger upon their premises, into which they may reasonably anticipate that others may fall. This is merely the restatement of the old common-law duty to refrain from wilful injury even to a trespasser.

''A person cannot escape liability for negligence merely because the person was a trespasser where . . . the presence of the trespasser was known to him, or ought to have been

known and by the use of ordinary care the defendant might have avoided the injury.'' (*Fisher* v. *Burrell,* 116 Or. 317 [241 Pac. 40, 43].)

Trespass is present in practically all ''attractive nuisance'' cases, but trespass alone is not sufficient to bar recovery in the case of children going upon unguarded premises. (*Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515 [271 Pac. 1060]), where a child swimming in an irrigation canal was drawn into a concealed syphon; *Faylor* v. *Great Eastern Q. Min. Co.,* 45 Cal. App. 194 [187 Pac. 101], where a child playing with a mine car fell into an open pit; *Clark* v. *Pacific Gas & Elec. Co.,* 118 Cal. App. 344 [5 Pac. (2d) 58, 6 Pac. (2d) 297], where a child climbed up a power pole and came in contact with a high-tension wire.

Plaintiff alleges abandonment. That is probably only an issue here in so far as it goes to show the degree of care exercised by defendants over a highly dangerous and insidious instrumentality.

We are concerned not with the refinements of title to personal property, or its technical ownership, but with the degree of negligence, if any, shown by defendants in leaving unguarded and lying upon the ground in a spot known to them to be frequented by children, dynamite caps.

It is not difficult to distinguish the case of *Hernandez* v. *Santiago O. G. Assn.,* 110 Cal. App. 229 [293 Pac. 875], from the case at bar. There a boy was killed by being struck by a block of ice dropped from a loading platform, while fruit cars were being iced. The boy had been frequently warned to stay away from the car, both by his parents and the employees of defendant. Furthermore, he was not attracted by the desire to play, which gives rise to the rule, but was getting something, and as the rule is laid down in *Peters* v. *Bowman, supra,* the loading operation could not be rendered safe without destroying its usefulness, and the danger was obvious and unconcealed.

We are of the opinion that the complaint states a cause of action and the judgment is reversed.

Thompson, J., and Plummer, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1934.