[Civ. No. 14653. Second Dist., Div. One. Oct. 22, 1945.]

KEITH LYNN WILSON, a Minor, etc., et al., Respondents, v. CITY OF LONG BEACH et al., Appellants.

Irving M. Smith, City Attorney, and Frank C. Charvat and Dewey L. Strickler, Deputies City Attorney, for Appellants.

Joseph A. Ball for Respondents.

DORAN, J.—This action was brought to recover damages resulting from personal injuries to Keith Lynn Wilson, aged six years at the time of the accident. A jury returned verdicts in favor of the minor for $2,000, and in favor of the father, Herbert E. Wilson, for $319.02. The defendants prosecute this appeal from, (1) the minute order denying defendants' motion for judgment notwithstanding the verdicts as to both plaintiffs, (2) the judgment entered in favor of the minor, and (3) the order granting the minor a new trial on the issue of damages alone. No appeal is taken from the judgment in favor of the minor's father.

The cause of action against the city of Long Beach is stated under the enabling provisions of section 400, California Vehicle Code, it being alleged that the city owned a gasoline tractor

used to propel road-conditioning machinery, and employed the defendant Kimberling to drive it; that plaintiff's injury was the result of the negligent operation of such motor vehicle. The equipment in question consisted of a rooter or scarifier, a disc and a grader. In street work the tractor pulled only one machine at a time, the other pieces of equipment being parked at the side of the road during the day. The period of work was during school vacation time and the foreman testified that it was sometimes necessary to follow along with a stick to keep the neighborhood children out of the way. These children, some 10 to 20 in number and aged from about 5 to 13 years, including Keith Wilson, frequently played around and upon the idle pieces of equipment. The foreman had seen Keith nearly every day for about three weeks while the crew had been working in the neighborhood, and on more than one occasion had warned the boy to stay away from the equipment. On August 31, 1942, the crew of three men had been reconditioning Golden Avenue with the rooter, and children had played on the grader, which was not in use. About 3:45 p. m. the street work was stopped for the day and the three pieces of equipment were assembled, train-like, for removal to an overnight parking place. So connected, they were 60 or 70 feet long. The foreman testified that the rooter "was covered up with children. We had to get them off before we could couple on." At the time of attaching the grader to the train the foreman looked back and did not see any children on the grader but did see "children lined up on the parking on both sides of the street."

The foreman then walked ahead to remove a barricade, and told the tractor driver, Kimberling, also a defendant herein, to "come on." Kimberling looked back and saw "several children near the sidewalk line . . . and I noticed that they were very much in a line." No children were seen on the equipment at that time. However, the infant plaintiff had, at some time, climbed on the grader, and when the train started was either thrown off or jumped off. One wheel passed over the boy's pelvis, resulting in a fracture of the right pubic bone involving the hip joint. The fracture healed well and the doctor's findings of impairment of use were negative.

The trial court, on its own motion, refused to permit the infant plaintiff, aged 7½ years at the time of the trial, to testify because of his age and understanding. Edward Warrick, aged 11 years, testified that Keith Wilson had been playing

around and upon the idle equipment since about noon; that a big boy came back and said they were going to start the tractor and for everybody to get off; that Keith stepped down on the axle of the grader and was going to jump, whereupon the tractor "started up with a jerk and threw him backwards . . . by the wheel and backed up on his hip and forward." Billy Lewiston, aged 15, testified that he told Keith Wilson to get off the grader, that Keith "started to get off and the thing jerked . . . and he got caught on the side of the wheel like, against the curbing. . . . He got on that axle and then the thing jerked and he fell off." The record discloses no evidence showing the exact time that the infant plaintiff got on the grader.

In the language of respondents' brief, the issue of law presented on appeal is this: "What duty did Kimberling (the driver) owe to the minor plaintiff at the time and place of the accident?" It is the appellants' (defendants') contention that since the minor plaintiff was a trespasser, defendants were not under the duty of exercising ordinary care, but that the only duty was that of refraining from wilful or wanton conduct towards such trespasser; furthermore, that there was no negligence whatsoever. It is conceded by respondent that "neither the pleadings nor the proof sustain a finding that the injury was caused by the wilful or wanton misconduct of Kimberling." It is likewise admitted that this case is not governed by the attractive nuisance doctrine. The issue is further narrowed in respect to plaintiff's status, by the respondents' statement:

"A more realistic approach to the question is to yield the point and admit that the child was a technical trespasser upon the City's grader."

As said in appellants' reply brief, "Any survey of the law in the field of negligence as applied to a trespasser discloses at once as an elementary principle that no affirmative care at all is required to assure the safety of the trespasser and that the trespasser can recover for his injuries only when he proves that he was wilfully or wantonly injured. Respondents now urge a departure from this rule on the ground that in a case of this character it is socially desirable and represents some sort of advanced humanitarian philosophy." In this connection the respondents have cited the case of *Hamakawa* v. *Crescent Wharf & Warehouse Co.*, 4 Cal.2d 499, 501 [50 P.2d 803], holding that where a person was on a pier or dock without consent of those in control, "the defendant owed

the plaintiff no legal duty except to refrain from inflicting upon him any wilful or wanton injury . . ., and to conduct its activities with reasonable care for his safety only after it knew or from facts within its knowledge should have known of the plaintiff's presence." It will be noted that, contrary to respondents' contention, the "wilful and wanton" rule was expressly approved, and since it was not shown that the defendant was aware of plaintiff's presence in fact, the court held that defendants' motion for judgment notwithstanding the verdict should have been granted.

The Hamakawa case, even in its most favorable aspect, does not support respondents' position since the evidence in the case at hand fails to show that the defendants knew of the infant's presence on the grader at the time the tractor was started, nor is it shown that there was any negligent act of any character.

More to the point is the case of *Allred* v. *Pioneer Truck Co.*, 179 Cal. 315, 318 [176 P. 455], where it was held that the owner of a horse-drawn furniture van, on the end gate of which several boys were riding, unseen by the driver, is not liable for the death of a boy who attempted to climb on the vehicle, slipped and fell in front of the hind wheel. The court stated that it was not the duty of the defendant to place men in such positions as to be able to see and prevent boys from attempting to board the vehicle. "It is a matter of common knowledge that boys are prone to steal rides on all sorts of vehicles . . . but it would be an intolerable rule that imposed upon the owner of vehicles the duty of employing guards to keep boys so inclined to trespass, at a safe distance therefrom." Again, in *Johnston* v. *Associated Terminals Co.*, 13 Cal.App.2d 121 [56 P.2d 259], it was held proper to direct a verdict for defendants in an action for the death of a 12-year-old boy who, while skating on the street, took hold of a truck trailer despite warnings to keep off, fell and was crushed by the rear wheels. The language of the opinion at page 123 is applicable to the present case: "A reading of the record clearly shows that the death of the deceased was the tragic result of a boyish prank, but it fails to show that such death resulted from any act or omission on the part of respondents for which liability could be fastened upon them." In *Norland* v. *Gould*, 200 Cal. 706 [254 P. 560], recovery was denied for injury to a 10-year-old boy, received when the boy attempted to climb upon defendant's automobile truck, the cause of action

there being based upon the driver's alleged wilful and wanton negligence in omitting to use due care. The court observed that this case was analogous to the Allred case hereinbefore mentioned. In *Giannini* v. *Campodonico*, 176 Cal. 548, 550 [169 P. 80], involving injury to a 14-year-old boy, the court again announced the usual rule in respect to a trespasser, saying: "The only duty is to abstain from willful or wanton injury. In other respects one who thus enters upon the premises does so at his own risk and subject to all the ordinary risks which attach to such premises."

In seeking to avoid the effect of these and other similar California opinions, the respondent cites certain general statements contained in the Restatement of the Law of Torts which, counsel contends, "fails to recognize the wilful and wanton conduct rule quoted by appellants." It is unnecessary to observe that the restatement does not purport to affect the existing California law. However, in the California Annotations to the Restatement of the Law of Torts, section 333, the California rule is stated as follows: "No duty is owed a trespasser except not to inflict wanton or wilful injury and to use ordinary care after he is seen," citing *Toomey* v. *Southern Pacific R. Co.*, 86 Cal. 374 [24 P. 1074, 10 L.R.A. 139]; *Green* v. *South San Francisco R. etc. Co.*, 181 Cal. 392 [184 P. 669]; *Lambert* v. *Western Pacific R. Co.*, 135 Cal.App. 81 [26 P.2d 824].

Respondent has also cited *Parra* v. *Cleaver*, 110 Cal.App. 168 [294 P. 6], and *Conroy* v. *Perez*, 64 Cal.App.2d 217 [148 P.2d 680]. In both of these cases infants, aged respectively 10 months, and 2 years, 8 months, were struck when defendant's truck was being backed up; the facts were in no way comparable to the present case, and the trespass theory was not discussed. These authorities are therefore not in point. Likewise, the case of *Skinner* v. *Knickrehm*, 10 Cal.App. 596 [102 P. 947], while affirming judgment for injury to an infant sustained while playing on a wagon attached to a house which was being moved along a street is readily distinguishable on two grounds, (1) the minor in that case had been impliedly invited to ride; (2) the doctrine of attractive nuisance was applied, which latter doctrine is concededly not involved in the present case.

The respondents maintain that the driver was negligent because, "First of all, . . . he was put on notice that children were probably on or so near the grader that to move it

with his motor vehicle might cause them harm. He was unable to see the grader from his seat on the tractor, but he could have left his seat, stepped to the side and looked back. ... Secondly, he started the grader without giving any word of warning to the children. This combination of acts in disregard to the minor's safety is active negligence." The above argument appears to lose sight of the fact that the driver, Kimberling, was not in charge of operations but was complying with orders to "go on" given by the foreman Bolt. Moreover, both the driver and the foreman looked to see if there were any children on the equipment, and saw none, after which the tractor was started slowly. The children had been repeatedly warned, and Keith Wilson had been warned by the boy Billie Lewiston just previous to the accident. In short, the record fails to show any conduct which may be characterized as "active" negligence or any other type of carelessness on the part of the defendants.

As was said in *Allred* v. *Pioneer Truck Co.,* 179 Cal. 315, 317 [176 P. 455], "the proposition advanced, carried to its logical conclusion, would mean that the driver . . . whose duty requires him to observe the road along which he is traveling and attend to his motor power, must be Argus-eyed or accompanied by outriders charged with the duty of seeing that small boys do not find lodgment upon the running-boards or other parts of the vehicle or approach, a position of danger where they may, as in this case, fall under a wheel. The law does not impose such duty on one lawfully operating a vehicle along a public street." In the instant case, even assuming that a duty of reasonable care was owing to the infant, it is impossible to see where there has been a breach of that or any duty upon which liability can be predicated.

The following from 38 American Jurisprudence 779 is applicable: "The accepted view is that the tender age of a child, rendering it incapable of looking out for its own safety, does not raise a duty where none otherwise exists. . . . It is said that the responsibility for avoiding injury to a trespassing child from defective or dangerous premises lies with the parent or legal custodian of the child rather than with the proprietor of the premises." In 19 California Jurisprudence 624 a similar statement occurs: "In the absence of circumstances which bring a case under the attractive nuisance doctrine, it is said that an owner of land owes no other duty to a child who is trespassing . . . than he owes to an adult trespasser." As

before mentioned, the attractive nuisance doctrine is not involved in the present litigation.

The defendants in this case were not only engaged in a legitimate undertaking,—that of improving the city streets, but actually were administering a municipal duty highly beneficial to public safety and welfare. To adopt the respondents' view of the law would amount to making a municipality practically an insurer as to the safety of trespassing children, and set up an entirely new rule of liability. It would, for example, render the improvement of city streets during a period of school vacation such a hazardous undertaking as might well deter a city from attempting to make such necessary improvements as were involved in the present case. The use of modern motorized equipment would then entail, as seems to be suggested by respondent, the marshalling of a small army of guards, outriders and footmen to control the unpredictable activities of trespassing children. Neither an advanced humanitarian philosophy, nor any other doctrine urged by respondent, can justify such a departure from the long established rules hereinbefore mentioned.

█ Appellants argue that there was an abuse of discretion in granting plaintiff's motion for a new trial on the issue of damages alone. However, there was no motion for a new trial filed by the defendant, and the granting of a new trial on the single issue of damages, is a matter of discretion with which the appellate court does not ordinarily interfere. *Quevedo* v. *Superior Court,* 131 Cal.App. 698 [21 P.2d 998]; *Adams* v. *Hildebrand,* 51 Cal.App.2d 117 [124 P.2d 80].

█ Appellants contend that since the proof of negligence was not "overwhelming" the motion should have been denied under the implied authority of *Crandall* v. *McGrath,* 51 Cal. App.2d 438, 440 [124 P.2d 858], which says: "where the proof of . . . negligence and . . . proximate cause . . . is *overwhelming,* then the decision of the trial court in confining the new trial to the issue of damages only should not be disturbed on appeal." (Italics added.) However, this latter question has become moot in the instant case in view of the determination that, as a matter of law, there is no liability whatsoever for injuries sustained by the infant trespasser.

█ Throughout the trial defendants consistently presented the issue of law that no liability existed for the reason that plaintiff was a trespasser,—by way of an objection to evidence at the beginning of the trial; again, by motions for

nonsuit, directed verdict, and for judgment notwithstanding the verdict, all of which were decided adversely to appellants. Whatever determination of the earlier motions may have been proper, it seems clear that defendants' motion for judgment notwithstanding the verdict should have been granted. The facts are not in dispute; plaintiff's status as a trespasser is clear; it is admitted that the defendants were innocent of any wilful or wanton act. It is likewise clear that the presence of any child on the equipment when the tractor was started was unknown to the defendants and that there was reasonable ground to believe that no child was in danger. It is particularly significant, as pointed out by appellants, that the driver "saw the children lined up along the sidewalk and hence reasonably assumed that they were all there." Under the circumstances here existent, a decision in favor of the infant plaintiff is contrary to both law and evidence.

For the foregoing reasons the judgment is therefore reversed.

York, P. J., and White, J., concurred.

Petitions for a rehearing were denied November 15, 1945, and the following opinion was thereupon rendered:

DORAN, J.—Both appellants and respondents petition for a rehearing. Appellants request a modification to clarify the question as to whether the judgment of reversal includes a reversal of the order denying defendants' motion for a judgment notwithstanding the verdict. Although the notice of appeal included an appeal from said order and, the record of that fact is noted in the opinion, nevertheless, no reference thereto is to be found in the briefs.

Appellants' opening brief specifies but three questions involved in the appeal and no question is raised therein concerning the above mentioned order. Nor does respondent make any reference thereto. So far as the briefs are concerned, the question was abandoned. The questions raised were all considered in the opinion and a reversal of the order denying the motion for judgment notwithstanding the verdict is therefore not included in the order of reversal.

Respondents' petition for a rehearing relies apparently, on the court's failure to base the opinion upon the rule that "Plaintiffs' cause of action was predicated upon." The trial

court's order denying defendants' motion for a judgment notwithstanding the verdict, is also referred to for the first time.

For the reasons stated, both of the petitions for rehearing are denied.

York, P. J., and White, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 20, 1945. Gibson, C. J., and Carter, J., voted for a hearing.