[Civ. No. 14338.   First Dist., Div. Two.   Aug. 31, 1950.]

MARGARET JANE PUCHTA, a Minor, etc., Appellant, v. N. ROTHMAN et al., Respondents.

Dolwig & Gaudio for Appellant.

F. E. Hoffmann for Respondents.

GOODELL, J.—Appellant sued for $50,000, for injuries sustained in a building which was under construction, when she fell through an opening in the second floor thereof onto a concrete floor 12 or 13 feet beneath. A general demurrer was sustained (with leave to amend) to each of the two counts of the amended complaint. Appellant declined to amend and judgment was entered for respondents for costs. This appeal followed.

Appellant's statement of facts as alleged in the complaint is as follows: "On or about the 6th day of February, 1947, the defendants were engaged in the construction of a building in South San Francisco. . . . The building was partially completed on that date and the second floor was overlaid with a sheet of tar paper. Under this tar paper and totally concealed by it was a hole for a proposed ventilator or skylight. The stairway had already been completed so that access to the second floor was easy and convenient. Children had, to defendants' knowledge, played upon this structure and knowing this, defendants had in fact erected a barricade to protect them from this known danger. On or about the 6th day of February, 1947, defendants removed this protective barricade and plaintiff Margaret Jane Puchta, 10 years of age, went to the second floor of the building to play and while so engaged, stepped upon the tar paper above the concealed hole, plunging through to the first floor, suffering severe personal injury."

Appellant concedes that it is "the general rule that a land owner owes no duty of care to trespassers" and states that the first count is based on the attractive nuisance doctrine, which is an exception to that rule.

The attractive nuisance doctrine was first applied in California in *Barrett* v. *Southern Pacific Co.*, 91 Cal. 296 [27 P. 666, 25 Am.St.Rep. 186], where the Supreme Court, with two rules on the subject from which to choose, selected the rule followed by the United States Supreme Court, and by Pennsylvania, Michigan, Missouri, Kansas and Minnesota, and rejected that of New Hampshire. It is a typical attractive nuisance case since it involved a turntable.

*Cahill* v. *E. B. & A. L. Stone & Co.,* 153 Cal. 571 [96 P. 84, 19 L.R.A.N.S. 1094], involved a push-car used in laying a railroad track in a city street which car, without any brake, was left unguarded, unenclosed and unlocked, and a 12-year-old boy was injured while playing thereon while it was in motion. A demurrer to his complaint was sustained but the judgment was reversed on the authority of the Barrett case. The court at page 574 said: "The rule, of course, is not to be confined to turntables, but applies to any attractive and dangerous machinery. . . . It is true that in this state the rule has been strictly limited to the particular character of cases mentioned in the Barrett case. In *Peters* v. *Bowman,* 115 Cal. [345] 349 [56 Am.St.Rep. 106, 47 P. 113, 598], wherein it was held that the owner of a lot was not liable for the death of a boy drowned in a pond on his premises, Mr. Justice McFarland, speaking of the so-called 'turn-table cases,' says: 'The rule as thus applied rested on the ground that the immature judgment of a young child could not well determine or provide against the danger of meddling with such machinery, and that, therefore, the railroad company was liable for legal negligence in erecting it and leaving it exposed as an attraction to children, and a temptation to them to intermeddle with it.' It is further stated that the principle of these 'turn-table cases,' while well established in this state, is an exception to the general rule that the owner of land is under no legal duty to keep it in safe condition for others than those whom he invites there."

"Originally, the attractive nuisance doctrine was applied only to machinery under certain circumstances, but in this state its application has been extended to various appliances and contrivances." (*Hernandez* v. *Santiago etc. Assn.,* 110 Cal.App. 229, 233 [293 P. 875].) Thus it was applied in *Pierce* v. *United G. & E. Co.,* 161 Cal. 176 [118 P. 700], where a loose guy wire came in contact with a live wire; in *Skinner* v. *Knickrehm,* 10 Cal.App. 596 [102 P. 947], where a wagon was attached to the rear of a house being moved through city streets; in *Faylor* v. *Great Eastern Q. M. Co.,* 45 Cal.App. 194 [187 P. 101], where unlocked ore cars were left in an unguarded, unused, mining tunnel; in *Sandberg* v. *McGilvray-Raymond Granite Co.,* 66 Cal.App. 261 [226 P. 28], where a railroad train was slowly backing; in *Morse* v. *Douglas,* 107 Cal.App. 196 [290 P. 465], where a trailer and vat of boiling tar were left unguarded in a city street, and in *Lambert* v. *Western Pacific R. R. Co.,* 135 Cal.App. 81 [26 P.2d 824],

where an abandoned box of dynamite caps was left on a railroad right of way under construction.

The courts have refused to extend the rule to such things as ponds and reservoirs (*Peters* v. *Bowman, supra*; *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal.App. 624 [174 P. 414]; *Reardon* v. *Spring Valley Water Co.*, 68 Cal.App. 13 [228 P. 406]), storm drains (*Melendez* v. *Los Angeles*, 8 Cal.2d 741 [68 P.2d 971]; *Beeson* v. *Los Angeles*, 115 Cal.App. 122 [300 P. 993]), a stable (*Giannini* v. *Campodonico*, 176 Cal. 548 [169 P. 80]), a dance hall (*Doyle* v. *Pacific Electric Ry. Co.*, 6 Cal.2d 550 [59 P.2d 93]), an icing platform (*Hernandez* v. *Santiago etc. Assn.*, 110 Cal.App. 229, supra).

An unfinished building has none of the characteristics of turntables, moving cars or wagons, live wires, or "dangerous and attractive machinery." Respondents' assertion in their brief that they have found no case holding such a structure to be an attractive nuisance virtually challenged their adversary to produce one, but since no reply brief was filed none was forthcoming.

In *Peters* v. *Bowman, supra*, 115 Cal. 345, 349-50, the court said: "the rule of the turntable cases is an exception to the general principle that the owner of land is under no legal duty to keep it in a safe condition for others than those whom he invites there, and that trespassers take the risk of injuries from ordinary visible causes; and it should not be carried beyond the class of cases to which it has been applied," and added (p. 356) in denying a rehearing: "The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or *difficulty of preventing the danger without destroying or impairing the usefulness of the thing*, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions." (Emphasis added.)

In *Loftus* v. *Dehail*, 133 Cal. 214, 218 [65 P. 379], the court said: "But it by no means follows, . . . that anything or everything which a jury may find, or a court may determine, to be attractive as a playground or plaything for children casts a responsibility of guard and care upon the owner of that thing. . . . *Venturesome boys, and even girls, make playgrounds of unfinished buildings,* climb perilous heights, and

scamper over insecure boards and rafters. If an owner became responsible, merely because children were attracted, it would burden the ownership of property with a most preposterous and unbearable weight.'' (Emphasis added.) The last quotation, which used *unfinished buildings* as an example, while merely a dictum, was repeated 35 years later in *Doyle* v. *Pacific Electric Ry. Co.*, 6 Cal.2d 550, 552, *supra*. In the latter case a 13-year-old boy trespasser ventured onto a canvas-covered skylight opening and fell through it, *in much the same way as appellant fell through this paper-covered opening.*

When the cases speak of guarding the dangerous contrivance, they are not speaking of a warning of ''danger'' or a notice to ''keep out,'' but of something that will physically prevent children and others from going upon the premises. This is indicated by the case of *Faylor* v. *Great Eastern Q. M. Co.*, 45 Cal.App. 194, *supra*, where the mining property was enclosed with a barbed wire fence, and where there was posted in a conspicuous place on the gate ''a sign six feet long and eighteen inches wide, and with the word 'Danger' painted thereon in letters one foot high and the words 'No Admittance' about eight inches high.'' Notwithstanding these precautions the court held that the mining company should have sealed up the mouth of the unused tunnel. It is indicated also in the Barrett case, 91 Cal. 296, *supra*, where the turntable was equiped ''with a latch and slot, such as is in common use on such tables, to keep it from revolving'' which was fastened at the time, but since ''it was not protected by any inclosure'' or guarded, the defendant was held liable.

It is self-evident that any barricade at the foot of the stairway of this building, of sufficient size and strength to keep children from going up the stairs, would destroy the very purpose for which the stairs were built and retard the completion of the building.

Appellant quotes the Restatement of the Law of Torts, section 339, and argues that the California rule on attractive nuisances is substantially in accord with it. Generally speaking it is, but the cases which we have cited show the lines of distinction which the California courts have drawn. A building under construction, being immobile for one thing, is readily distinguishable from an attractive, moving vehicle or piece of machinery. In applying the rule our courts draw the line at a situation where the protective measure would destroy

or impair the usefulness of the property itself. The Faylor case, 45 Cal.App. 194, *supra,* relied on by appellant, involved (a) an idle, nonoperating mine, and (b) it is one of the cases where moving things—push-cars in an unused mining tunnel—were the attraction; a building under construction is in nowise comparable, for both reasons.

Under the California cases the first count states no cause of action within the doctrine of attractive nuisances, and the demurrer thereto was properly sustained.

*The second count* is grounded, appellant's counsel say, "upon the entirely different doctrine that a landowner owes a duty to refrain from *wilfully* inflicting injury upon a *known* trespasser."

In *Bradley* v. *Thompson,* 65 Cal.App. 226, 229 [223 P. 572], the court said: "Inasmuch as the injury caused by the offending instrumentality in this class of cases is the result of a trespass committed by the child, it is incumbent upon the plaintiff to obviate what otherwise would be the legal consequences of the trespass by alleging and proving all the facts which are necessary to remove the effect of the trespass as an objection to a recovery." This applies with equal force here.

The charging part of plaintiff's allegations is that defendants "wilfully removed a stairway barricade, theretofore erected by said defendants as a safety measure, and wilfully failed to guard, enclose, or block said stairway and roof."

Instead of stating facts from which the court could conclude for itself whether or not these acts were wilful, the pleader simply adds "wilfully" as a descriptive epithet. An allegation, for instance, that, in order to teach trespassers a lesson, the owner had planted some contrivance or trap on the premises, would state *facts* showing a wilful act. (See *Peters* v. *Bowman, supra,* 115 Cal. 345, 348, which instances a spring gun and *Bourie* v. *Spring Valley Water Co.,* 8 Cal.App. 588, 592 [97 P. 530], which instances a ditch).

Obviously, the removal of a barricade which had "enclosed" and "blocked" the stairway, would restore the stairway to usefulness as a means of access to the unfinished second floor—a perfectly normal and legal act of ownership which could hardly be called wilful. Even under the attractive nuisance rule an owner is not expected to destroy or impair the usefulness of his property in order to safeguard trespassing children (*Peters* v. *Bowman, supra,* 115 Cal. 345, 350, 355; *Polk* v. *Laurel Hill Cemetery Assn., supra,* 37 Cal.App. 624, 637). That being so, then surely he cannot be held to such

an onerous duty where the property is not an attractive nuisance, the rule being "that the owner of land is under no duty to keep his premises safe for trespassers" (*Peters* v. *Bowman, supra,* 115 Cal. 345, 348).

Moreover, the allegation that defendants knew that children played in and about the building (squinting, as it does, at the attractive nuisance rule) adds nothing at all to the claim of wilfulness. ▪ The rule now under discussion applies to children as well as to adults. To again quote *Peters* v. *Bowman* (p. 349) : " 'The rule is that ordinarily the owner of premises owes no duty of immunities to trespassers, though the latter be infants.' (Whittaker's Smith on Negligence, 2d ed., 67, note, and cases there cited.) "

▪ The demurrer to the second count was properly sustained.

▪ Appellant presents an argument respecting the third count. There were three counts in the original complaint, the last of which pleaded special damages arising from medical and hospital expenses, in the sum of $1613.25. This third count was apparently abandoned, as it does not appear in the amended complaint. The amended complaint of course superseded the original complaint and the latter performs no function as a pleading and cannot be looked to for the issues to be tried. (21 Cal.Jur. 214.)

The judgment is affirmed.

Nourse, P. J., concurred.

DOOLING, J.—I dissent. Our Supreme Court reiterated only the other day the well settled rule that under the liberal provisions of our code "(i)t is not necessary in this state to plead with the exactitude required at common law." (*Steiner* v. *Rowley,* 35 Cal.2d 713, 719 [221 P.2d 9].) Certainly judged by this standard, and in my opinion by any reasonable standard, the first count of the complaint states a cause of action under the attractive nuisance doctrine. It alleges that the minor plaintiff is 10 years of age ; that the defendants on or about February 6, 1947, were engaged in constructing a building ; that prior to the injury herein complained of children had been attracted to the unfinished building for the purpose of playing therein "and had played in and about said stairway and uncompleted roof, *all of which,* at all times herein mentioned, *was well known to the defendants*; . . . that the second

story of said structure was incomplete . . . and at that time was covered by a sheet of tar paper covering, which tar paper covering also was laid over a proposed ventilation opening or skylight, *totally concealing the same*''; that the minor plaintiff was attracted, with other children, to the building as a place to play and *"without knowledge or notice of the existence of said covered ventilator shaft* . . . fell into the concealed ventilation opening . . . through the temporary tar paper covering . . . .'' (Emphasis mine.)

These allegations fit the concealed peril or ''trap'' phase of the attractive nuisance doctrine expounded by the courts in *Sanchez* v. *East Contra Costa Irr. Co.*, 205 Cal. 515 [271 P. 1060] and *Faylor* v. *Great Eastern Q. Min. Co.*, 45 Cal.App. 194 [187 P. 101], like a glove tailored to the hand.

It is a too mechanical application of the rules of law to say that because the cases have held that to bring the *ordinary* perils of an unfinished building within the attractive nuisance doctrine ''would burden the ownership of property with a most preposterous and unbearable weight,'' *ergo* no sort of trap or concealed peril in an unfinished building can come within that doctrine. The removal of a piece of tar paper from a ventilator opening would not burden the ownership of property with a ''preposterous and unbearable weight'' or any appreciable weight at all, particularly when measured against the lives and safety of little children known to have played in the building.

With the knowledge that little children were in the habit of playing about the building, according to the pleaded facts, the defendants covered the entire second story floor, including the ventilator opening, with tar paper thus giving the deceptive appearance of a safe flooring to the ventilator opening and the minor plaintiff deceived by the appearance fell through the opening and was injured, thus springing the ''trap.''

The courts of this state have held over and over again that an open body of water on a defendant's land is not within the attractive nuisance doctrine and yet the court in *Sanchez* v. *East Contra Costa Irr. Co., supra,* had no difficulty in finding that a concealed trap in an open canal came within the doctrine. The court made the distinction between the obvious dangers and the trap or concealed peril in the following words (205 Cal. at pp. 517-518) :

''In the instant case, the canal with its shallow water was the bait of the trap. The defendant knew that children lived close by and the opening of the syphon might have been easily

guarded. It is a matter of common knowledge that children playing on the edge of a shallow body of water will be tempted to play in the water and to reach into it, and while the defendant need not have guarded against this open and obvious stream of water, under numerous California decisions, we think a different rule applies where an apparently harmless, shallow stream of water contains a large opening into which anyone might slip, which opening is wholly unguarded and completely concealed from view. . . . The children assumed the risk of the open, obvious, notorious danger incident to the canal, containing about three feet of water; but they did not assume the risk of an unknown, concealed, and unguarded danger.''

Substitute ''unfinished building'' for ''canal'' and you have the pleaded case. Nor can I agree that *Doyle* v. *Pacific Elec. Ry. Co.*, 6 Cal.2d 550 [59 P.2d 93] is a comparable case. There a canvas did conceal a skylight, but it was in the attic of a finished building used as a public ballroom which could only be reached by a ladder from the spectators' gallery and a cat walk of planks, a situation very different from an unfinished building open to playing children and in which, according to the allegations of the complaint the fact that children ''had played . . . was well known to the defendants.'' The facts of the two cases readily distinguish them.

I would reverse the judgment.

A petition for rehearing was denied September 30, 1950.